Argued and submitted November 1, 1994, decision of the Court of Appeals affirmed in part and reversed in part; case remanded to the Court of Appeals for consideration May 25, petition for reconsideration denied July 17, 1995

Carol BARCIK,
as guardian ad litem for Scott Barcik, a minor;
William Jansen, as guardian ad litem
for Tom Jansen, a minor;
Joe Kasten and Sheilah Kasten, as guardians ad litem
for Shannon Kasten, a minor;
Barry Edwards and Mona Edwards, as guardians ad litem
for Marce Edwards, a minor;
Cordes Lowery and Sharon Lowery, as guardians ad litem
for Matt Lowery, a minor;
David Frost; Josh Olson; and
Chuck Kostur and Dianne Kostur, as guardians ad litem
for Kay Kostur, a minor,
*Petitioners on Review,*

*v.*

Mark KUBIACZYK;
Al Davidian; Russ Joki; Pat Biggs; Jack Clinton;
Mike Nelson; Richard Carlson; Gary Cumpston;
and the Tigard-Tualatin School District 23 J,
*Respondents on Review.*

(CC C92-0085CV; CA A77165; SC S41340)

895 P2d 765

Jonathan M. Hoffman, of Martin, Bischoff, Templeton, Langslet & Hoffman, Portland, argued the cause for petitioners on review. With him on the petition was Michael G. Harting.

Duane A. Bosworth, of Davis Wright Tremaine, Portland, argued the cause for respondents on review. With him on the brief was Gustavo J. Cruz, Jr.

GRABER, J.

Durham, J., filed a concurring opinion in which Fadeley and Unis, JJ., joined.

## GRABER, J.

The issue in this case is whether the Court of Appeals erred when, *sua sponte*, it reversed a circuit court judgment from which plaintiffs had appealed and remanded the case with instructions to dismiss the complaint and vacate the judgment, on the ground that "there was no justiciable controversy before the circuit court when it entered judgment on plaintiffs' [claims]." *Barcik v. Kubiaczyk*, 127 Or App 273, 277, 873 P2d 456 (1994). We conclude that the Court of Appeals erred, in part, in dismissing plaintiffs' claims, and we therefore affirm in part and reverse in part.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs challenged regulations adopted by the Tigard-Tualatin School District (district) governing official and unofficial student publications. The challenged regulations authorize school administrators to review and censor official and unofficial student publications before their distribution and to discipline students who are responsible for the distribution or publication of material that violates the regulations.

Plaintiffs Carol Barcik, William Jansen, Joe and Sheilah Kasten, Barry and Mona Edwards, and Cordes and Sharon Lowery are the parents and guardians for Scott Barcik, Tom Jansen, Shannon Kasten, Marce Edwards, and Matt Lowery, who were seniors at Tigard High School when the district enacted the regulations on January 30, 1992. Plaintiffs Frost and Olson were seniors at Tigard High School when the district enacted the regulations on January 30, 1992.[1] All the foregoing students have graduated from Tigard High School. We will refer to them collectively as "Senior plaintiffs." Plaintiffs Chuck and Dianne Kostur are the parents of Kay Kostur, who was a student at the district's junior high school when the regulations were enacted.

Before the regulations were enacted, the following events occurred. On December 4, 1991, Scott Barcik distributed a flyer that solicited articles for publication in

---

[1] Although some plaintiffs were the parents of students, and some plaintiffs were students themselves, that distinction is not material to the issue before us.

"Low-Spots," a nonschool-sponsored ("underground") publication. The next day, the school's assistant principal told Barcik that distribution of the flyer violated school policy, because it had not been approved by the school's director of student activities. The assistant principal issued a formal warning to Barcik and informed him that, if he intended to publish and distribute "Low-Spots," he could either submit "Low-Spots" to the school's administration for approval before its distribution or publish "Low-Spots" without using any school resources and distribute it off school grounds.

On January 13, 1992, "Low-Spots" was distributed to students on school property. No prior approval had been given for the distribution. Defendant Kubiaczyk, the principal at Tigard High School, informed Barcik and Jansen that "Low-Spots" was unacceptable, because it contained profanity and because it had not been submitted to the administration for prior approval. Imposition of proposed disciplinary measures (discussed more fully below) was postponed pending the circuit court's decision in this matter.

On January 23, 1992, a second underground publication, "The Spots on My Dog," appeared on school grounds. None of the plaintiffs was involved in its publication or distribution. That publication also contained profanity.

"Hi-Spots" is the official newspaper of Tigard High School. Shannon Kasten, Marce Edward, Matt Lowery, and David Frost served on the editorial board of "Hi-Spots." Following the distribution of "Low-Spots," but before the distribution of "The Spots on My Dog," the "Hi-Spots" editorial board decided to write an editorial on underground student papers. Frost drafted an editorial entitled "Low-Spots Says a lot about freedom," which said that the "Hi-Spots" staff "appreciate[d the] underground paper's special opinion and angle." Kubiaczyk was concerned that the editorial would be perceived as an endorsement of both "Low-Spots" and "The Spots on My Dog." Kubiaczyk discussed his concerns with other administrators in the district and gave a copy of the "Hi-Spots" editorial to the district's lawyers. Publication of the editorial was postponed. On January 23, the School Board saw copies of the two underground papers and the "Hi-Spots" editorial.

On January 24, 1992, Kubiaczyk met with the editorial board of "Hi-Spots." He told them that the School Board had asked for review of the editorial and that the editorial could not be printed as written. Kasten and Edwards called the printer and instructed it to place the following message in red ink, where the editorial was to appear: "CENSORED BY: MARK KUBIACZYK, RUSS JOKI, AL DAVIDIAN, TIGARD-TUALATIN SCHOOL BOARD."[2]

On January 30, 1992, the district adopted the challenged regulations. On January 31, plaintiffs filed a complaint challenging those regulations. Plaintiffs alleged that the regulations violate Article I, section 8, of the Oregon Constitution,[3] the First and Fourteenth Amendments to the Constitution of the United States,[4] and various Oregon statutes. Plaintiffs sought an injunction barring the continued enforcement of the regulations, plus monetary damages of $100, pursuant to 42 USC § 1983,[5] ORS 30.265,[6] and ORCP

---

[2] Defendant Joki is the district's superintendent. Defendant Davidian is the district's assistant superintendent.

[3] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

[4] The First Amendment to the Constitution of the United States provides in part:

"Congress shall make no law * * * abridging the freedom of speech, or of the press."

The First Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Gitlow v. New York*, 268 US 652, 45 S Ct 625, 69 L Ed 1138 (1925).

The Fourteenth Amendment to the Constitution to the United State provides in part:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law."

[5] 42 USC § 1983 provides in part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[6] ORS 30.265(1) provides in part:

"[E]very public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties * * *."

79.[7] Pursuant to ORS 28.010,[8] plaintiffs also sought a declaration that portions of the regulations are unconstitutional.

The circuit court conducted a trial on the merits of plaintiffs' claims. Thereafter, on October 10, 1992, the circuit court entered a "Declaratory Judgment and Final Decree." The court dismissed all plaintiffs' claims that were rooted in either the Oregon Constitution or Oregon statutes. The court held, however, that defendant Kubiaczyk's censorship and discipline of Barcik and Jansen, and the administration's censorship of the "Hi-Spots" editorial, violated the First and Fourteenth Amendments and, thus, that plaintiffs prevailed on their claim under 42 USC § 1983. Defendants were ordered to expunge from Barcik's and Jansen's records any disciplinary action taken against them related to the publication and distribution of "Low-Spots." The circuit court declared the district's regulations for school-sponsored publications constitutional and also declared the regulations for unofficial publications constitutional, except for the provisions concerning pre-publication review. The circuit court ordered defendants to refrain permanently from exercising pre-publication review of any nonschool-sponsored publication and from disciplining any student in the district for distributing any nonschool-sponsored publication, "except in cases where a student personally distributes a non-school-sponsored publication which violates the District's regulations for unofficial publications."

The parties debate whether the academic records of Barcik and Jansen contain any indication of disciplinary action related to the challenged regulations. The circuit court's judgment states:

---

[7] ORCP 79 provides for the issuance of temporary restraining orders and preliminary injunctions.

[8] ORS 28.010 provides:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree."

"The court generally adopts Plaintiffs' Proposed Findings of Fact except as the court may have made contrary factual findings in its oral ruling on August 13, 1992."

In turn, "Plaintiffs' Proposed Findings of Fact" stated: Scott Barcik was given a warning by the assistant principal, for solicitation of articles to "Low-Spots," and that warning is reflected in his student record (Proposed Finding of Fact #3); plaintiffs Barcik and Jansen were to be suspended for seven days after the distribution of "Low-Spots" (Proposed Finding of Fact #10); that suspension is reflected in Barcik's student record (Proposed Finding of Fact #11); the proposed suspension was converted to a ten-page research paper on students' First Amendment rights (Proposed Finding of Fact #13); and that punishment was postponed pending the outcome of this litigation (Proposed Finding of Fact #14). Nothing in the trial court's oral ruling on August 13, 1992, contradicts those proposed findings. Thus, we take the foregoing as findings of the circuit court.

The testimony indicates that some record of disciplinary action taken against Barcik for his involvement in "Low-Spots" exists in Barcik's academic record. However, there is no similar indication that Jansen's academic record contains any report whatsoever of disciplinary action taken in connection with his involvement in "Low-Spots." Moreover, the evidence establishes affirmatively that any discipline that was contemplated as to Jansen never was activated and was withdrawn.

Plaintiffs appealed from the circuit court's judgment, arguing that the district's regulations violated Article I, section 8, of the Oregon Constitution. The Court of Appeals, *sua sponte*, reversed the judgment of the circuit court and remanded the case with instructions to dismiss the complaint and vacate the judgment. *Barcik*, 127 Or App at 282. Applying Oregon law, the Court of Appeals concluded that plaintiffs failed to present a justiciable controversy. *Id.* at 279-82. The Court of Appeals stated that, because Senior plaintiffs had graduated before the circuit court entered judgment, they failed to present a justiciable controversy, and their claims were moot. *Id.* at 280-82. As to plaintiff Kostur, the Court of Appeals reasoned that her challenge was too hypothetical and anticipatory in nature to raise a justiciable

controversy, because it was based on "speculative future events that may not occur as anticipated or may not occur at all." *Id.* at 280.

Plaintiffs petitioned for this court's review, and we allowed the petition.

## STANDARDS OF MOOTNESS AND JUSTICIABILITY APPLICABLE TO PLAINTIFFS' CLAIMS UNDER 42 USC § 1983

Mootness and justiciability are treated similarly, but not identically, under Oregon and federal law.

■■    Under federal law, a justiciable controversy exists when a "plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 US 490, 498, 95 S Ct 2197, 45 L Ed 2d 343 (1975). A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 US 478, 481, 102 S Ct 1181, 71 L Ed 2d 353 (1982) (citations omitted; internal quotation marks omitted).

■■    Under Oregon law, a justiciable controversy exists when "the interests of the parties to the action are adverse" and "the court's decision in the matter will have some practical effect on the rights of the parties to the controversy." *Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993). "Cases that are otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties," are moot. *Id.* at 406.

At oral argument, we asked the parties for supplemental briefing. We asked them to address whether this court's decision in *Rogers v. Saylor*, 306 Or 267, 760 P2d 232 (1988), which held that certain state law restrictions cannot impede a section 1983 claim brought in state court, applies to this case.

In *Rogers*, this court addressed whether limitations on individual and governmental liability contained in the Oregon Tort Claims Act, ORS 30.270, apply to a claim under the federal civil rights act, 42 USC § 1983, when that federal claim is brought in state court. 306 Or at 270. This court concluded that the statutory immunity provision in ORS

30.270 does not limit liability under section 1983. *Id.* at 273-85.

In reaching that conclusion, this court noted that state courts have concurrent subject matter jurisdiction with federal courts over section 1983 claims and that Oregon courts are available to hear claims under section 1983. The court then considered whether a state may impose limits that could be characterized as procedural or jurisdictional (rather than as substantive limits on a claim) on section 1983 actions in state court. 306 Or at 279-84. The court discussed the United States Supreme Court's decision in *Felder v. Casey*, 487 US 131, 108 S Ct 2302, 101 L Ed 2d 123 (1988), and concluded that procedural or jurisdictional hurdles that "had the effect of limiting the rights granted by Congress and created an inconsistency between actions brought in state and federal courts" may not be imposed by a state court. 306 Or at 281.

In *Felder*, the Supreme Court was called on to decide whether the notice-of-claim provisions of a Wisconsin tort claims act could be applied to section 1983 actions brought in state court. The Court held that they could not. 487 US at 153. The Court had two reasons for reaching that conclusion:

> "Because the notice-of-claim statute at issue here conflicts in both its purpose and effects with the remedial objectives of § 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is pre-empted when the § 1983 action is brought in a state court." *Id.* at 138.

In *Rogers*, this court seized on the second reason discussed in *Felder* and stressed the need to avoid a rule of law that would result in different outcomes depending solely on whether a section 1983 claim is raised in state or federal court. This court rejected a proposed rule of law that

> "would create a distinction between a section 1983 claim in state or federal courts. * * * If * * * the same remedy is 'not available in state courts, federalism concerns would be raised because most plaintiffs would have no choice but to bring their complaints concerning state actions to federal courts.'

[*Maine v. Thiboutot*, 448 US 1, 11 n 12, 100 S Ct 2502, 65 L Ed 2d 555 (1980).]" *Rogers*, 306 Or at 283.

This court read *Felder* as saying "that a state law which creates the potential for different outcomes in state and federal courts cannot be given effect." *Ibid*. The court concluded that "[n]either the Oregon legislature nor the Oregon courts can limit the rights that a plaintiff has in a federal claim, even when that federal claim is brought in state court." *Id*. at 284.

The position of the Supreme Court of the United States on federal pre-emption of state law in section 1983 cases has not changed since *Rogers* in a way that would undermine *Rogers*. In *Howlett v. Rose*, 496 US 356, 110 S Ct 2430, 110 L Ed 2d 332 (1990), the Supreme Court addressed whether a state law defense of sovereign immunity is available to a school board otherwise subject to suit in a Florida court, when such a defense would not be available if the action had been brought in a federal court. 496 US 358-59. The Court held that such a defense was not available. *Id*. at 383. In reaching that conclusion, the Court stated:

> "The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it a requirement that the State create a court competent to hear the case in which the federal claim is presented. The general rule bottomed deeply in [a] belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them. The States thus have great latitude to establish the structure and jurisdiction of their own courts. In addition, States may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law." *Id*. at 372 (citations omitted; internal quotation marks omitted).

■     Under *Howlett*, the threshold question becomes whether a state's standards of mootness and justiciability are either jurisdictional rules or "neutral procedural rules" not pre-empted by federal law. *See also Rogers*, 306 Or at 281 (court considered whether state's law is jurisdictional or procedural).

Oregon standards of mootness and justiciability are not "jurisdictional rules," as that term is used in *Howlett*. In *Howlett*, the court described jurisdictional rules as rules that

"reflect the concerns of power over the person and competence over the subject matter that jurisdictional rules are designed to protect." 496 US at 381. Because Oregon circuit courts will hear section 1983 cases, they have competence over the subject matter. There also is no issue here of power over the person; the parties have availed themselves of the jurisdiction of Oregon courts.

Neither are Oregon standards of mootness and justiciability "neutral procedural rules," as that term is used in *Howlett*. "Neutral procedural rules" are "rule[s] regarding the *administration* of the courts." 496 US at 372 (emphasis added). In other words, procedural rules control *how* a party may bring a claim (*e.g.*, where to file a complaint or how to serve it) and how a court proceeds with a claim, rather than *who* may bring a claim or *what* claim is viable. Mootness and justiciability rules do not fit *Howlett's* definition of procedural rules.

Plaintiffs have alleged that their federal constitutional rights were abridged under color of state law. If plaintiffs could pursue their section 1983 claims in a federal district court in Oregon, applying federal standards of mootness and justiciability, but would be prevented from pursuing identical section 1983 claims in an Oregon circuit court, applying state standards of mootness and justiciability, then both of the concerns raised by the Supreme Court in *Felder* arise. As the discussion below will show, if state standards of mootness and justiciability are applied to plaintiffs' section 1983 claims raised in state court, plaintiffs will be prevented from securing injunctive relief and their "uniquely federal remedy" in state court. Application of state standards of mootness and justiciability also would limit the rights that a plaintiff has in a federal claim, simply because that claim is brought in state court.

The foregoing discussion leads to the conclusion that an Oregon court cannot apply state standards of mootness and justiciability to a section 1983 claim brought in state court if application of those standards would preclude a plaintiff's federal claim, but application of federal standards would not.[9] That, however, is what the Court of Appeals did

---

[9] We need not and do not address whether state standards of mootness and justiciability could be applied to a section 1983 claim brought in state court if

in its decision below. To that extent, the Court of Appeals erred.

## PLAINTIFFS' STATE LAW CLAIMS

■  Our conclusion that the Court of Appeals erred by failing to apply federal law to plaintiffs' section 1983 claims does not end our inquiry. We next must decide whether plaintiffs' state law claims are moot. If those claims are not moot, the substance of those claims must be addressed before addressing the substance of plaintiffs' federal law claims. *See Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981) (stating principle). This principle is particularly strong in a section 1983 action, in which a party claims to have been deprived of a federal constitutional right under color of state law, because the state does not deny any right claimed under the federal constitution if the claim before the court is fully resolved by state law. *Oregon State Police Assn. v. State of Oregon*, 308 Or 531, 538, 783 P2d 7 (1989), *cert den* 498 US 810 (1990). If, however, plaintiffs' state law claims are moot, they may not be addressed. *See Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982) (Oregon courts do not have authority to render advisory opinions).

■  The parties stipulated in the circuit court that this case presents a justiciable controversy. However, justiciability may not be conferred by stipulation or consent of the parties in the absence of an actual justiciable controversy. *Cummings Constr. v. School Dist. No. 9*, 242 Or 106, 110, 408 P2d 80 (1965).

> "Justiciability is a vague standard but entails several definite considerations. A controversy is justiciable, as opposed to abstract, where there is an actual and substantial controversy between parties having adverse legal interests. * * * A justiciable controversy results in specific relief through a binding decree as opposed to an advisory opinion which is binding on no one. The court cannot exercise jurisdiction over a nonjusticiable controversy because in the absence of

application of those standards would be more favorable, rather than less favorable, to a plaintiff. Today's decision addresses only the situation in which state standards of mootness and justiciability prevent a plaintiff from bringing a section 1983 claim in state court, when the plaintiff's identical section 1983 claim would not be precluded in a federal forum.

constitutional authority, the court cannot render advisory opinions." *Brown*, 293 Or at 449 (citations omitted).

A. *Senior Plaintiffs*

■ For Senior plaintiffs, except Barcik (whose unique situation is discussed separately below), this case is analogous to *Kay v. David Douglas Sch. Dist. No. 40*, 303 Or 574, 738 P2d 1389 (1987), *cert den* 484 US 1032 (1988). In *Kay*, the plaintiffs, four high school seniors, sought declaratory and injunctive relief against the inclusion of a formal prayer in their high school's commencement exercises. By the time the circuit court entered its judgment, the graduation exercises had already passed. This court instructed the circuit court to vacate the judgment, because "on the date of the circuit court's judgment there was no justiciable controversy before the court." 303 Or at 576. The plaintiffs presented no justiciable controversy, because none of them "demanded, nor did any allege facts entitling that plaintiff to demand, more general relief against future practices of defendants." *Ibid.* *See also Brumnett*, 315 Or at 404-05 ("A second requirement for a justiciable controversy is that the court's decision in the matter will have some practical effect on the rights of the parties to the controversy.").

Here, too, Senior plaintiffs allege no facts entitling them to relief from future practices of defendants. On the date of the circuit court's judgment, no Senior plaintiff, except Barcik, had any right or claim that would be affected by a declaratory judgment. Senior plaintiffs suffered no continuing harm from the alleged past deprivation of their Article I, section 8, rights. Similarly, because no Senior plaintiff, except Barcik, had any right that was being violated at the time the circuit court entered judgment, there was nothing for the circuit court to enjoin with regard to Senior plaintiffs. Senior plaintiffs' claims were moot, except as discussed below with respect to Barcik.

■ Senior plaintiffs' argument that they sought a declaration from the circuit court that their Article I, section 8, rights were violated in the past — not merely an injunction against future acts — does not help them avoid mootness. The Declaratory Judgment Act, ORS 28.010, quoted at note 8, above, gives courts the "power to declare rights, status, and

other legal relations, whether or not further relief is or could be claimed." However, declaratory relief is available only when it can affect *in the present* some rights between the parties; that is, in order to receive declaratory relief in Oregon, there must be a justiciable controversy between the parties on "which judgment may effectively operate." *State Farm Fire & Cas. v. Reuter*, 294 Or 446, 449, 657 P2d 1231 (1983). "The requirement that there be a justiciable case or controversy is not less strict in a declaratory judgment proceeding than in any other type of litigation." *Id.* at 448. "In order for a court to entertain an action for declaratory relief, the complaint must present a justiciable controversy." *Brown*, 293 Or at 449. The "Declaratory Judgment Act is not an independent grant of jurisdiction." *Id.* at 449-50.

This court has applied the justiciability requirement to declaratory judgment actions for over fifty years and has noted the constitutional origins of that requirement.

"Deciding hypothetical cases is not a judicial function. Neither can courts, in the absence of constitutional authority, render advisory opinions. A declaratory judgment has the force and effect of an adjudication. Hence, to invoke this extraordinary statutory relief there must be an actual controversy existing between adverse parties."

*Oregon Cry. Mfgs. Ass'n v. White*, 159 Or 99, 109, 78 P2d 572 (1938). Simply put, plaintiffs cannot sidestep the justiciability requirement by requesting declaratory relief.

Senior plaintiffs next argue that their claims for prospective relief meet the requirements of an exception to the mootness doctrine, because defendants' acts are "capable of repetition, yet evading review" and are matters of "public importance." In support of their argument, plaintiffs rely on a statement in *Perry v. Oregon Liquor Commission*, 180 Or 495, 498-99, 177 P2d 406 (1947): "Where the [moot] question is one involving the public welfare, and there is a likelihood of it[s] being raised again in the future, a court in the exercise of its discretion may decide it for the guidance of an official administrative agency."

This court repeatedly has repudiated the *"Perry* exception" relied on by Senior plaintiffs. For example, in *Mid-County Future Alt. v. Metro. Area LGBC*, 304 Or 89, 92, 742 P2d 47 (1987), this court refused to address the merits of a case when the "only reason advanced to justify continuation

of the case here is the claimed importance of resolution" of the matter:

> "This court, of late, has consistently declined to decide nonjusticiable or moot cases, despite claims of public importance, because of our regard for the constitution of this state, which separates the power and functions of the departments of government, Or Const, Art III, § 1, and vests in the courts only the 'judicial power.' Or Const, Art VII (Amended), § 1."

*See also Kay,* 303 Or at 577 (this court rejected the Court of Appeals' application of "capable of repetition, yet evading review" doctrine; suggestions that this court can hear cases based on the language in *Perry* "have been discarded in recent cases and should not be followed"); *Oregon Republican Party v. State of Oregon,* 301 Or 437, 440, 722 P2d 1237 (1986) (refusing to apply "capable of repetition, yet evading review" doctrine to a case that is, "strictly speaking, moot"); *Cooper v. Eugene Sch. Dist. No. 4J,* 301 Or 358, 367-68 n 9, 723 P2d 298 (1986) (noting that the court has not chosen to follow *Perry* in "[m]ore recent decisions"), *appeal dismissed* 480 US 942 (1987); *Hay v. Dept. of Transportation,* 301 Or 129, 134, 719 P2d 860 (1986) ("Recent cases have cast doubt on the validity of the *Perry* holding."); *State ex rel Oregonian Publishing Co. v. Sams,* 298 Or 329, 332-33, 692 P2d 116 (1984) (refusing to apply "capable of repetition, yet evading review" doctrine to mandamus proceeding, when alternative writ already had been complied with; "we note that this court has not in recent years accepted the view that it is a proper judicial function to render a legal opinion 'in the public interest' when there is no concrete underlying dispute to be decided"); *Oregon Medical Association v. Rawls,* 281 Or 293, 301, 574 P2d 1103 (1978) (refusing to make an exception to the rule against advisory opinions for matters of "great public importance," because "advisory opinions have not been authorized in Oregon"). The *"Perry* exception" is not available to Senior plaintiffs.

■ Senior plaintiffs' next argument, that their request for nominal damages prevented their state law claims from becoming moot, is similarly unconvincing.[10] In *Hunter v. City of Eugene,* 309 Or 298, 304, 787 P2d 881 (1990), this court held that a private right of action for damages against a

---

[10] Plaintiffs do not argue that their prayer for attorney fees prevented their claims from becoming moot.

municipality or its employees does not exist directly under the Oregon Constitution, but is limited to extant common-law, equitable, and statutory remedies. The court stated:

"Violation of a state constitutional right does not presently *per se* result in a civil or criminal sanction. * * *

"* * * * *

"Oregon's Bill of Rights provides no textual or historical basis for implying a right to damages for constitutional violations. * * * Neither can we impute from the Tort Claims Act any intent on the part of the legislature to create or recognize such a cause of action against the city or its servants.

"* * * * *

"Lacking legislative guidance [similar to 42 USC § 1983], this court is in a poor position to say what should or should not be compensation for violation of a state constitutional right and what limitations on liability should be imposed, and to address a plethora of other problems that have been addressed and at least partially answered by federal legislation. State constitutional history and the subsequent jurisprudential history of no implied causes of action for damages for constitutional violations plainly leave us without any guidance.

"If an implied private right of action for damages for governmental violations of Article I, section 8, and other non-self-executing state constitutional provisions is to exist, it is appropriate that it come from the legislature, not by action of this court.

"We therefore hold that *persons whose rights under Article I, section 8, of the Oregon Constitution are violated by a municipality or its employees may not bring an action for damages against the municipality or its employees directly under the constitution, but will be limited to existing common-law, equitable, and statutory remedies.*" *Id.* at 302-04 (emphasis added).

In other words, the court held that a person has no claim at all directly under Article I, section 8, to support any form of damages whatsoever. Nominal damages may be awarded, in a proper case, only to a party who has *established a claim*. Under *Hunter*, Senior plaintiffs' claims for nominal damages for past deprivations of Oregon constitutional rights can be sustained only if they can make that claim under an

extant common-law, equitable, or statutory theory that provides nominal damages as a remedy; they cannot claim nominal damages solely under Article I, section 8.

Senior plaintiffs attempt to find that remedy in the Declaratory Judgment Act. The circularity of this argument is readily apparent.

■      Like Article I, section 8, the Declaratory Judgment Act, standing alone, does not provide for awards of nominal damages. Rather, it allows courts to "declare rights, status, and other legal relations" when a justiciable controversy exists. ORS 28.010. If the rights, status, and other legal relations of Senior plaintiffs and defendants entitled them to an award of nominal damages for a violation of their Article I, section 8, rights, they would be entitled to pursue their claim for nominal damages under the Declaratory Judgment Act. But, Article I, section 8, does not give them that right. The Declaratory Judgment Act cannot be used to give Senior plaintiffs a right that does not otherwise exist for them in Oregon law. Senior plaintiffs' attempt to combine a constitutional provision (Article I, section 8) and a statutory provision (the Declaratory Judgment Act) into a claim for nominal damages cannot succeed when *neither* provision, standing alone, provides for an award of nominal damages.

To summarize, Senior plaintiffs, except Barcik, presented no justiciable controversy under Oregon law. The circuit court erred in considering their state law claims on the merits; those claims should have been dismissed.

B.   *Plaintiff Barcik*

■      Plaintiff Barcik's situation differs from that of the other Senior plaintiffs. A declaration that defendants acted unconstitutionally in relation to Barcik, and an order requiring defendants to remove references to discipline from his academic record, would affect Barcik's rights.

As noted above, Barcik's academic record contains references to disciplinary action taken against him, resulting from defendants' alleged deprivation of his Article I, section 8, rights. Those references could be removed following a declaration that the references were put there pursuant to unconstitutional regulations or that those regulations were

unconstitutional as applied to Barcik. Removal of those references would both acknowledge and remedy the alleged wrong done to Barcik. Because of the references to discipline presently in Barcik's academic record, there exists a controversy between the parties on which judgment effectively may operate. By ordering defendants to remove all references to Barcik's discipline associated with this matter from his academic record, the court would not be enjoining an act that already had been completed.

The existence of that justiciable controversy does not extend, however, to Barcik's claims for *prospective* relief. Like the other Senior plaintiffs, Barcik cannot be affected by a declaration that future enforcement of the regulations is unconstitutional. Neither can he be affected by a declaration restraining the district from enforcing those regulations in the future, because he will not be subject to those regulations in the future.

With respect to his disciplinary record, a justiciable controversy exists between Barcik and defendants. The Court of Appeals erred by holding otherwise. Barcik is entitled to consideration of his state law claims on the merits, to the extent that those claims relate to his disciplinary record.

## C. *Plaintiff Kostur*

The Court of Appeals dismissed plaintiff Kostur's claims, reasoning that she alleged

"only speculative future events that may not occur as anticipated or may not occur at all. There has not been any showing that the district regulations have had a 'cognizable effect' on her. *Savage v. Munn*, [317 Or 283, 292 n 6, 856 P2d 298 (1993)]. The hypothetical nature of her anticipatory challenge renders it non-justiciable. Accordingly, Kostur is not properly before us at this time." *Barcik*, 127 Or App at 280.

In her complaint, Kostur alleged that she "is a ninth grader at Fowler Junior High School and will attend Tigard High School this fall." She also alleged that she "intends to write for LOW-SPOTS and/or write and distribute non-school-sponsored publications on the campus of Tigard High School." Defendants denied the allegation that Kostur would attend Tigard High School. They also denied that Kostur

intended to participate in the writing and distribution of any school- or nonschool-sponsored student newspaper.

Kostur now argues, in addition, that the challenged regulations apply through the district and had a "chilling effect" on her even before she entered the high school. She also argues that, because she is a student in the Tigard-Tualatin School District and subject to the regulations, her injury is immediate and tangible.

Although Kostur's *allegations* may be concrete enough to entitle her to pursue state law claims, we need not decide that question because of the procedural posture of the case. The circuit court conducted a trial on the merits of plaintiffs' claims. Kostur did not testify, and no one else testified about her situation. Plaintiffs presented no evidence that Kostur would become enrolled in Tigard High School or that she intended to write for or distribute official or underground school publications there. Plaintiffs failed to present even an affidavit or deposition asserting that Kostur was enrolled in the school district. There is a complete absence of evidence in the record that would allow us to conclude or infer that Kostur has been or will be subjected to the challenged regulations. There is no evidence that the regulations have had "some cognizable effect" on her. *See Savage*, 317 Or at 292 n 6 (stating that standard). Accordingly, Kostur has not established any justiciable controversy between herself and defendants.

To summarize, Kostur presented no justiciable controversy under Oregon law. The circuit court erred in considering her state law claims on the merits; those claims should have been dismissed.

## PLAINTIFFS' FEDERAL CLAIMS

Because most of plaintiffs' claims are not justiciable under state law, and thus state law does not provide a remedy as to those claims, we turn to plaintiffs' federal claims.

### A. *Senior Plaintiffs*

Under federal law, a case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy*, 455 US at 481 (citations omitted; internal quotation marks omitted). A

question is no longer live when even a favorable decision on it would have no effect on the litigants. Moreover, an actual controversy must exist at all stages of appellate review, and not simply at the date on which an action is initiated. *Roe v. Wade*, 410 US 113, 125, 93 S Ct 705, 35 L Ed 2d 147 (1973).

■ By the time the circuit court entered judgment, Senior plaintiffs' federal claims for prospective relief had become moot. Senior plaintiffs had graduated from the high school. Senior plaintiffs received prospective relief through the declaratory judgment ordering defendants to refrain from enforcing some of the regulations. That prospective relief had no effect on the rights of Senior plaintiffs when the circuit court entered judgment, because the relief limits what the district can do with respect to district students, and Senior plaintiffs were no longer district students. Neither is there any likelihood that they will again become district students. No live controversy exists between Senior plaintiffs and defendants. Senior plaintiffs' federal claims for prospective relief thus are moot. *See Indianapolis School Comm'rs v. Jacobs*, 420 US 128, 129-30, 95 S Ct 848, 43 L Ed 2d 74 (1975) (dismissing a challenge by students to censorship of school paper, because they failed to comply with federal rule for establishing a class *and* because the case was moot when students had graduated by the time the case reached the Supreme Court).

■ Neither can Senior plaintiffs avoid mootness by arguing that, under federal law, they have presented an issue that is "capable of repetition, yet evading review." In the absence of a class action, *Murphy*, 455 US at 482, the Supreme Court has limited that doctrine to situations in which the challenged act is too short in duration to be fully litigated before its cessation or expiration *and* "there [is] a reasonable expectation that *the same complaining party* would be subjected to the same action again." *Meyer v. Grant*, 486 US 414, 417 n 2, 108 S Ct 1886, 100 L Ed 2d 425 (1988) (citations omitted; internal quotation marks omitted; emphasis added).

Since *Meyer*, the Supreme Court of the United States has continued to adhere to the rule that the exception to the mootness doctrine for alleged wrongs that are "capable of repetition, yet evading review" is limited to situations in

which the same complaining party may again be harmed. In *Lewis v. Continental Bank Corp.*, 494 US 472, 481, 110 S Ct 1249, 108 L Ed 2d 400 (1990), the Court summarized:

"We have permitted suits for prospective relief to go forward despite abatement of the underlying injury only in the 'exceptional situations' where the following two circumstances were simultaneously present: '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that *the same complaining party* would be subjected to the same action again.' " (Citations omitted; some internal quotation marks omitted; emphasis added.)

*See also Masters, Mates & Pilots v. Brown*, 498 US 466, 473, 111 S Ct 880, 112 L Ed 2d 991 (1991) (applying exception where it was likely "that the Union's rule would again present an obstacle to a preconvention mailing by [the same] respondent"); *Norman v. Reed*, 502 US 279, 288, 112 S Ct 698, 116 L Ed 2d 711 (1992) (declining to treat election-related controversy as moot, because "[t]here would be every reason to expect *the same parties* to generate a similar, future controversy subject to identical time constraints if we should fail to resolve the constitutional issues that arose in 1990" (emphasis added)).

As discussed above, it is extremely unlikely that Senior plaintiffs can or will be subjected to the challenged regulations in the future. The federal "capable of repetition, yet evading review" doctrine does not apply to Senior plaintiffs. Accordingly, they present no live controversy in their claim for prospective relief. Their section 1983 claims for prospective relief must, therefore, be dismissed.

■ However, Senior plaintiffs' claim for a declaration that defendants' conduct in censoring "Low-Spots" and the "Hi-Spots" editorial was unconstitutional under federal law, and for nominal damages, is not moot. Senior plaintiffs sought declaratory relief and nominal damages for the alleged violation of their First Amendment rights for the censoring of the two papers. That allegation is sufficient to allow them to pursue their federal claims, because the challenged regulations were applied to them in the past.

■ The Supreme Court of the United States consistently has held that a claim brought under 42 USC § 1983 for

damages for a past wrong is not moot, even if claims for prospective declaratory and injunctive relief have become moot. *See, e.g., Richmond v. J. A. Cronson Co.*, 488 US 469, 478 n 1, 109 S Ct 706, 102 L Ed 2d 854 (1989) (challenge to city's affirmative action ordinance in a section 1983 action was not moot because, even though ordinance had expired and there was no basis for injunctive relief, appellant had alleged actual damages); *Board of Pardons v. Allen*, 482 US 369, 370 n 1, 107 S Ct 2415, 96 L Ed 2d 303 (1987) (fact that prison inmates who sought declaratory and injunctive relief from certain parole procedures had been released from prison before Supreme Court's decision did not render action moot, because the complaint also sought compensatory damages); *Los Angeles v. Lyons*, 461 US 95, 109, 103 S Ct 1660, 75 L Ed 2d 675 (1983) ("We agree that Lyons had a live controversy with the City. Indeed, he still has a claim for damages against the City * * *. [T]he issue here is not whether that claim has become moot but whether Lyons meets the preconditions for asserting an injunctive claim in a federal forum."); *Flagg Bros., Inc. v. Brooks*, 436 US 149, 154 n 3, 98 S Ct 1729, 56 L Ed 2d 185 (1978) (challenge to state statute in section 1983 action not moot, when claim for injunctive relief no longer available but plaintiff may be able to demonstrate actual damages); *Memphis Light, Gas & Water Div. v. Craft*, 436 US 1, 8-9 & n 8, 98 S Ct 1554, 56 L Ed 2d 30 (1978) (when plaintiffs seek damages and declaratory relief for past wrong in section 1983 action and claim for injunctive relief is unavailable, case is not moot when "claim is not so insubstantial or so clearly foreclosed by prior decisions"). The amount of damages sought by the plaintiff is unimportant. "[T]he amount of money * * * at stake does not determine mootness. As long as the parties have a concrete interest in the outcome of the litigation, the case is not moot notwithstanding the size of the dispute." *Firefighters v. Stotts*, 467 US 561, 571, 104 S Ct 2576, 81 L Ed 2d 483 (1984). *See also Craft*, 436 US at 9 n 8 (case not moot, because a damages claim existed when district court recommended an award of only $35).

██ ██ The fact that Senior plaintiffs sought nominal damages instead of actual damages for the past deprivation of their federal constitutional rights does not alter the analysis. When a plaintiff alleges a deprivation of a federal constitutional right, but alleges no actual harm, nominal damages are

the proper means by which to vindicate that deprivation. In *Memphis Community School Dist. v. Stachura*, 477 US 299, 106 S Ct 2537, 91 L Ed 2d 249 (1986), the plaintiff, a school teacher, sought both compensatory and punitive damages under section 1983 for an alleged deprivation of his First Amendment right to academic freedom. The teacher was suspended, with pay, after teaching a school-approved curriculum on human sexuality to junior high school students. Eventually, the teacher was reinstated. A jury awarded the teacher damages, based in part on the "value" of his First Amendment rights. The Supreme Court held that damages based on the abstract value or importance of constitutional rights are not a permissible element of compensatory damages in section 1983 actions. 477 US at 310. In *Stachura*, the Court noted, however, that "nominal damages * * * are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury." *Id.* at 308 n 11. *See also Carey v. Piphus*, 435 US 247, 266-67, 98 S Ct 1042, 55 L Ed 2d 252 (1978) (approving an award of nominal damages for the deprivation of procedural due process rights); *Farrar v. Hobby*, 506 US 103, ____, 113 S Ct 566, 121 L Ed 2d 494, 504 (1992) (in holding that an award of nominal damages for deprivation of a constitutional right renders a party a "prevailing party" for the purpose of attorney fees under 42 USC § 1988, the Court stated that "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay"). For the purpose of vindicating federal rights under section 1983, nominal damages serve a similar function to compensatory damages when actual harm cannot be proved, but a federal right has been infringed.

We conclude that a claim for nominal damages for a past deprivation of a federal constitutional right withstands a challenge based on mootness. Although the Supreme Court has never addressed this precise issue, a number of federal circuit courts have done so since the Court's decisions in *Stachura* and *Carey*, and all have reached the same conclusion that we reach today. *See O'Connor v. City and County of Denver*, 894 F2d 1210, 1215-16 (10th Cir 1990) (applying *Stachura* and holding that section 1983 claim for nominal

damages only for an alleged past deprivation of First Amendment rights, is sufficient to avoid mootness); *Green v. McKaskle*, 788 F2d 1116, 1124 (5th Cir 1986) ("Because [the plaintiff's] complaint alleged violations of his constitutional rights [including First and Eighth Amendments, and the Fourteenth Amendment's Due Process and Equal Protection clauses], for which if proved he could receive at least nominal damages, he presented the district court with a case or controversy sufficient to invoke the court's jurisdiction."); *Henson v. Honor Committee of U. Va.*, 719 F2d 69, 72 n 5 (4th Cir 1983) ("The Supreme Court has made it plain that the deprivation of procedural due process creates an independent right to seek, at a minimum, nominal damages. [Plaintiff] sought both injunctive and monetary relief in his 42 USC § 1983 action against the University. Thus, his request for damages remained a live controversy even after the disciplinary proceedings were dropped." (citation omitted)); *Lokey v. Richardson*, 600 F2d 1265, 1266 (9th Cir 1979) ("regardless of actual damages, appellant could be entitled to nominal damages if he prevailed. His action therefore was not mooted" (citation omitted)), *cert den* 449 US 884 (1980); *Davis v. Village Park II Realty Co.*, 578 F2d 461, 463 (2d Cir 1978) ("If the wrong complained of is a mere technical violation of the plaintiff's constitutional rights and she is unable to prove actual damage, she would nevertheless be entitled to a recovery of nominal damages. * * * The availability of either nominal or substantial damages is sufficient to prevent this case from becoming moot").[11] 'Although, of

---

[11] The same view is endorsed by commentators as well.

"Although some cases seem to have suggested that a claim merely for nominal damages cannot avoid mootness, it is better to face the nominal damages question directly. The very determination that nominal damages are an appropriate remedy for a particular wrong implies a ruling that the wrong is worthy of vindication by an essentially declaratory judgment. A valid claim for nominal damages should avoid mootness."

Charles A. Wright, et al., 13A *Federal Practice and Procedure: Jurisdiction 2d* § 3533.3, 265-66 (1984) (footnotes omitted).

"A change in circumstances may eliminate the need for injunctive or declaratory relief and thus render claims for these forms of relief moot. When both prospective and retrospective relief are sought, however, a properly pleaded claim for monetary relief to compensate for past injury normally will prevent dismissal of the action for mootness even though the claims for prospective relief become moot.

"* * * * *

course, we are not bound by those decisions, we find their reasoning and consistency convincing.

Senior plaintiffs alleged a past act that resulted in a deprivation of their federal constitutional rights. The circuit court held that they were deprived of their First Amendment rights when the school censored the publication of the "Hi-Spots" editorial and exercised prior restraint over the publication of "Low-Spots." The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 US 347, 373, 96 S Ct 2673, 49 L Ed 2d 547 (1976). The unconstitutional exercise of a prior restraint is, by its nature, a deprivation of a constitutional right that cannot be withdrawn by later action on the part of the person enforcing the restraint. The restraint already has been committed at the time of the constitutional challenge. Senior plaintiffs requested, among other things, nominal damages as relief for those wrongs, as a means of vindicating their constitutional rights. Thus, their section 1983 claims presented a justiciable controversy as to the past deprivation of federal constitutional rights.

To the extent that the circuit court found a deprivation of those rights and ordered defendants to remedy that past wrong, the circuit court's award of retrospective relief to Senior plaintiffs provides a continuing basis for jurisdiction in the Court of Appeals. The Court of Appeals erred in reversing that part of the judgment on the basis of mootness.

B.   *Plaintiffs Barcik and Jansen*

The circuit court also awarded retrospective relief under federal law to Senior plaintiffs Barcik and Jansen. The circuit court ordered defendants to "expunge from their disciplinary records all references, if any, to warnings, discipline or other sanctions imposed" on Barcik and Jansen.

Under federal law, Barcik's and Jansen's request for retrospective relief is not rendered moot merely because their claim for prospective relief is moot. *See* 321 Or at 195. Barcik

---

"Although the issue is not free from doubt, the better view appears to be that a properly pleaded claim for nominal damages will defeat a claim of mootness." Martin A. Schwartz and John E. Kirklin, *Section 1983 Litigation* § 15.3, 812-13 (2d ed 1991) (citations omitted).

demonstrated that some record of discipline does exist concerning his involvement with "Low-Spots" and that an actual controversy exists. Should he prevail on the merits of his First Amendment claims, he may be entitled to both a declaration that the regulations as applied to him are unconstitutional and a removal of the disciplinary action taken against him from his academic record.

As to Jansen, however, there was no evidence to support the circuit court's findings as to disciplinary action. The circuit court erred, therefore, in rendering a decision concerning such purported action.

## C.  *Plaintiff Kostur*

■■■ As discussed above, Kostur failed to establish that she is a student in the district, that she will attend the high school, or that she is, was, or will be in any way harmed by the challenged regulations. She presented no evidence to show the existence of any controversy with defendants.

In the absence of a controversy between the parties, declaratory relief cannot issue under federal law. "A genuine threat must be demonstrated if a case or controversy * * * may be said to exist." *Ellis v. Dyson*, 421 US 426, 435, 95 S Ct 1691, 44 L Ed 2d 274 (1975). Kostur must "maintain a 'personal stake' in the outcome of the litigation throughout its course" in order to retain standing. *See Gollust v. Mendell*, 501 US 115, 125-26, 111 S Ct 2173, 115 L Ed 2d 109 (1991) (stating that principle).[12] She has failed to do so. Under federal law, she does not have standing to maintain her claim.

■■■ Kostur cannot avoid this determination by arguing that the parties stipulated that a justiciable controversy existed between them. Consent of the parties is never adequate to permit a federal court to assume justiciability when justiciability does not exist. *Sosna v. Iowa*, 419 US 393, 398, 95 S Ct 553, 42 L Ed 2d 532 (1975). Thus, an Oregon court applying federal law to plaintiff Kostur's federal claims could

---

[12] *See also O'Connor*, 894 F2d at 1214.

"Standing to raise an issue does not preserve for appeal a claim abandoned at trial. Stated differently, the standing doctrine does not undo the parties' trial strategy or their decisions regarding how to fashion their case. We do not consider on appeal issues not raised in the district court. Similarly, we will not consider claims abandoned in the district court." (Citation omitted.)

not assume that a justiciable claim exists. Kostur has not presented a "case or controversy" under federal law and, applying federal law, she cannot consent to the existence of one.

In the absence of any evidence to establish an actual controversy between Kostur and defendants, the circuit court had no choice but to dismiss Kostur's federal claims. It erred in considering those claims on the merits.

## CONCLUSION

In summary, we hold that the Court of Appeals erred when it applied state law to determine whether plaintiffs raise a justiciable controversy under 42 USC § 1983.

Applying state law to plaintiffs' state law claims, we hold that only plaintiff Barcik's claim for retrospective relief raises a justiciable controversy. The Court of Appeals erred when it ordered Barcik's claim for retrospective relief to be dismissed. All other plaintiffs fail to present justiciable controversies under state law. Accordingly, those plaintiffs' state law claims should have been dismissed.

Under federal law, all Senior plaintiffs raise a justiciable controversy as to their claims for retrospective relief. The Court of Appeals erred when it ordered those claims to be dismissed. Senior plaintiffs do not present a justiciable controversy as to their claims for prospective relief, however; those claims should have been dismissed.

Plaintiff Kostur fails to present a justiciable controversy under either state or federal law. Her claims should have been dismissed.

The decision of the Court of Appeals is affirmed in part and reversed in part. The case is remanded to the Court of Appeals for consideration on the merits of petitioner Barcik's state law claims for retrospective relief and of the federal claims for retrospective relief of all petitioners except Kostur.

**DURHAM, J.,** concurring.

I concur in the result reached by the majority. I write separately to state the basis for my concurrence with the majority's conclusion that the Senior plaintiffs' state law claims are moot.

Senior plaintiffs argue that their claim for declaratory relief will resolve a live controversy regarding the lawfulness of defendants' past actions and, therefore, is not moot due to Senior plaintiffs' graduation. That answer is not obvious, because they make no showing that a judgment resolving that controversy will affect, as a practical matter, the rights of any party. They attempt to bolster that argument by suggesting that their prayer for nominal damages defeats defendants' contention that the dispute is now purely hypothetical.

The majority rejects that argument on the following rationale:

"In *Hunter v. City of Eugene*, 309 Or 298, 304, 787 P2d 881 (1990), this court held that a private right of action for damages against a municipality or its employees does not exist directly under the Oregon Constitution, but is limited to extant common-law, equitable, and statutory remedies. * * *

"* * * Under *Hunter*, Senior plaintiffs' claims for nominal damages for past deprivations of Oregon constitutional rights can be sustained only if they can make that claim under an extant common-law, equitable, or statutory theory that provides nominal damages as a remedy; they cannot claim nominal damages solely under Article I, section 8.

"* * * * * *

"Like Article I, section 8, the Declaratory Judgment Act, standing alone, does not provide for awards of nominal damages. * * * Senior plaintiffs' attempt to combine a constitutional provision (Article I, section 8) and a statutory provision (the Declaratory Judgment Act) into a claim for nominal damages cannot succeed when *neither* provision, standing alone, provides for an award of nominal damages." *Barcik v. Kubiaczyk*, 321 Or at 189-91 (emphasis in original).

*Hunter* answered in the negative the following certified question:

" '(1) May persons whose rights under Article I, section 8 of the Oregon Constitution were allegedly violated by a municipality and by municipal employees bring an action for damages against the municipality and its employees directly under the Oregon Constitution?' " *Hunter*, 309 Or at 302.

The court explained:

> "[W]e are very reluctant to impose any civil responsibility in the form of damages for violation of such a right, absent specific legislation or clear legislative intent.
>
> "Oregon's Bill of Rights provides no textual or historical basis for implying a right to damages for constitutional violations. There is no clear indication as to the state, for example, that the legislature or the people intended to waive sovereign immunity in the Oregon Tort Claims Act, ORS 30.260 *et seq,* to permit such implied private rights of action, and that waiver can *only* be accomplished by the legislature, not by this court. *See Hale v. Port of Portland,* 308 Or 508, 516-17, 783 P2d 506 (1989). Neither can we impute from the Tort Claims Act any intent on the part of the legislature to create or recognize such a cause of action against the city or its servants." *Hunter,* 309 Or at 302-03 (emphasis in original, citations and parenthetical omitted).

*Hunter* purports to decide whether Article I, section 8, of the Oregon Constitution, affords a basis for "implying" a cause of action for a claim based "directly" on that provision. The majority adopts that reading. *Barcik v. Kubiaczyk,* 321 Or at 189-90. *Hunter* did not discuss any issue related to nominal damages. The *Hunter* court's answer to the question before it may be debatable, and I leave that potential debate for another day. However, I am concerned that *Hunter* failed to analyze fully the question whether Oregon citizens may rely on the alleged violation of duties imposed by the Oregon Constitution on public bodies and governmental actors in bringing actions for damages or for protective remedies under the Oregon Tort Claims Act, ORS 30.260 to 30.300.

The Oregon Constitution does not stand alone as a potential source of judicial remedies. By statute, the state expressly has made public bodies liable for their "torts," within statutory limits.[1] ORS 30.265(1) provides, in part:

> "Subject to the limitations of ORS 30.260 to 30.300, every public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties * * *."

---

[1] Other statutory sources of judicial remedial power include the writ of review, ORS 34.010 *et seq,* the writ of mandamus, ORS 34.105 *et seq,* and the Administrative Procedures Act, ORS 183.310 to 183.550.

ORS 30.260(8) defines "tort" in this context as follows:

> " 'Tort' means the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, the breach of which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy."

Under that definition, the breach of a noncontractual duty that injures a specific person and that would give rise to a protective remedy is a "tort." In my view, such duty could include those imposed by certain provisions of the Oregon Constitution, including Article I, section 8.

Whether the breach of a noncontractual duty also gives rise to a damages remedy depends primarily on the nature of the harm done, not on the nature of the duty that the actor violates. *See Urban Renewal Agency v. Lackey*, 275 Or 35, 38, 549 P2d 657 (1976) ("Any breach of a legal duty resulting in damages, other than those duties created by contract, is a tort, whether that duty is imposed by the common law or by statute."). If public actors falsely arrest, imprison, and physically injure a citizen without justification and in violation of constitutional standards, it is easy to recognize that damages are an appropriate remedy. Similarly, if students are physically assaulted or their property injured in the course of exercising their state constitutional right to speak, write, or print freely on any subject, the resulting injury is remediable through money damages. Under those circumstances, the defendants could not claim immunity if they acted unconstitutionally.

It is less clear that the violation of other state constitutional rights would lead so easily to a damages remedy. An example would be the failure to appoint counsel for an indigent defendant who is never questioned, booked, or prosecuted. What is absent there is not a constitutional violation, but a harm that calls for compensatory damages.

If the courts award money damages for the intentional invasion of a person's interest in person, property, or reputation, I see no reason why a public actor's intentional invasion of the same interest, in violation of constitutional rights protected by Article I, section 8, should not equally

support a claim for damages. In that circumstance, a violation of a constitutional right can serve as the predicate for a damages remedy. It is difficult to read ORS 30.260(8) and 30.265(1) to mean anything else.

In the present case, Senior plaintiffs assert only a claim for nominal damages. Because the focus of the case at trial was different, Senior plaintiffs did not have an occasion to brief or argue the effects of *Hunter*, or the Oregon Tort Claims Act and its definition of "tort," on their claim for nominal damages. Understandably, they do not attempt to interject those issues here. Under those circumstances, I concur in the court's judgment.

Fadeley and Unis, JJ., join in this concurring opinion.