Argued and submitted November 10, 1999, affirmed in CA A105305; dismissed as moot in CA A103356, A104745, A104762 and A105386 June 21, 2000

JOINT COUNCIL OF TEAMSTERS #37
Oregon, Southern Idaho and
Wyoming District Council of Laborers,
*Petitioners,*

*v.*

BUREAU OF LABOR AND INDUSTRIES
and Jack Roberts, Commissioner
of the Bureau of Labor and Industries
for the State of Oregon,
*Respondents.*

JOINT COUNCIL TEAMSTERS NO. 37
Oregon, Southern Idaho and
Wyoming District Council of Laborers,
*Appellants,*

*v.*

BUREAU OF LABOR AND INDUSTRIES
and Jack Roberts, Commissioner
of the Bureau of Labor and Industries
for the State of Oregon,
*Respondents,*

*and*

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 48,
*Respondent.*

(99C-10414; CA A103356 (Control),
A104745, A104762, A105386, A105305)
(Cases Consolidated)

11 P3d 247

Michael B. Dye argued the cause and filed the briefs for petitioners/appellants.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondents Bureau of Labor and Industries, and Jack Roberts, Commissioner of the Bureau of Labor and Industries for the State of Oregon. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Norman D. Malbin argued the cause and filed the brief for intervenor-respondent International Brotherhood of Electrical Workers Local 48.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

This case involves five consolidated actions challenging the validity of various prevailing wage rates set by respondents, the Bureau of Labor and Industries and its commissioner (collectively, BOLI), between February 15, 1998, and January 6, 1999. Petitioners, the Joint Council of Teamsters #37 and the Oregon, Southern Idaho and Wyoming District Council of Laborers, assert that BOLI's adoption of various prevailing wage rates was invalid because BOLI exceeded its statutory authority and failed to give notice before adopting the rates. BOLI responds that petitioners' challenges are moot because the challenged rates have been superseded by rates adopted in July 1999, and are therefore no longer in effect. BOLI argues in particular that, because ORS 279.350(2) would bar petitioners from recouping lost wages even if the challenged prevailing wage rates were invalidated, this court's decision on the validity of those rates would have no practical effect on the rights of the parties. For the reasons explained below, we agree with BOLI that petitioners' challenges to the superseded prevailing wage rates are moot.

In order to best understand petitioners' challenges and the relevant sequence of events, we begin with a brief description of the purpose and operation of Oregon's prevailing wage rate statutory scheme. The primary purpose of the prevailing wage law is to "ensure that contractors compete on the ability to perform work competently and efficiently while maintaining community established compensation standards." ORS 279.349. ORS 279.359 requires BOLI to "determine the prevailing rate of wage for workers in each trade or occupation in each locality * * * at least once each year by means of an independent wage survey." For purposes of that statute, a "locality" is one of 14 geographical districts identified by statute, ORS 279.348(2), and "prevailing rate of wage" is defined as:

"the rate of hourly wage * * * paid in the locality to the majority of workers employed on projects of similar character in the same trade or occupation, as determined by the Commissioner of [BOLI]. In making such determinations, the commissioner shall rely on an independent wage survey

to be conducted once each year. However, if it appears to the commissioner that the data derived from the survey alone are insufficient to establish the rate, the commissioner also shall consider additional information such as collective bargaining agreements, other independent wage surveys and the prevailing wage rates determined by appropriate federal agencies or agencies of adjoining states. If there is not a majority in the same trade or occupation paid at the same rate, the average rate of hourly wage * * * paid in the locality to workers in the same trade or occupation shall be the prevailing rate."

Enforcement of the "prevailing wage rates" is effectuated by ORS 279.350, which requires all contractors and subcontractors to pay "workers upon all public works * * * not less than the prevailing rate of wage" for that occupation in the locality where the labor is performed. Any contractor or subcontractor who violates that requirement "shall be liable to the workers affected in the amount of their unpaid minimum wages * * * and in an additional amount equal to said unpaid wages as liquidated damages." ORS 279.356.

With that background in mind, we now turn to the undisputed facts underlying petitioners' challenges to various prevailing wage rates set by BOLI between February 1998 and January 1999.

On February 15, 1998, BOLI issued a 70-page publication entitled "Prevailing Wage Rates for Public Works Contracts in Oregon," which identified specific prevailing wage rates by occupation and district. Five months later, on July 1, 1998, BOLI published an updated version of the same "Prevailing Wage Rates for Public Works Contracts in Oregon" pamphlet. On August 28, 1998, petitioners filed a petition for review of the February and July 1998 publications pursuant to ORS 183.400,[1] alleging that

---

[1] ORS 183.400 provides, in relevant part:

"(1) The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases.

"* * * * *

"(4) The court shall declare the rule invalid only if it finds that the rule:

"(a) Violates constitutional provisions;

"(b) Exceeds the statutory authority of the agency; or

"(c) Was adopted without compliance with applicable rulemaking procedures."

the rates published therein were invalidly promulgated "rules."[2]

On October 29, 1998, while the above petition was pending, BOLI adopted Temporary Rule OAR 839-016-0700, which provided that the wage rates published in the July 1998 "Prevailing Wage Rates for Public Works Contracts in Oregon" were the prevailing wage rates for work commenced after July 1, 1998. The rule was to be effective from October 29, 1998 to April 27, 1999, and was basically a readoption of the wage rates published in July 1998. BOLI's "Statement of Need and Justification" for adoption of that temporary rule provided:

> "If the appellate court were to hold that the prevailing rates of wage must be established through rulemaking, the challenged [July 1, 1998] rates would be invalid. That situation would create a hiatus in the existence of valid prevailing rates of wage extending forward from July 1, 1998, contrary to the legislative mandate. The hiatus would undermine the legislative policies announced in ORS 279.349. It would also preclude enforcement of those rates through any of the various procedures available under ORS 279.355 and 279.370.
>
> "Temporary rulemaking is necessary in order to avoid the potential consequences of the invalidation of the July 1, 1998 prevailing rates of wage."

Just a few days later, on November 2, 1998, BOLI adopted Temporary Rule OAR 839-016-0705, which provided that the prevailing wage rates for work beginning October 1, 1998, were the rates stated in the July 1998 publication of "Prevailing Wage Rates," as amended by "Oregon Determination 98-02." This second temporary rule was to be effective from November 2, 1998 through May 1, 1999. BOLI's Statement of Need and Justification again provided that "[t]emporary rulemaking is necessary in order to avoid the potential consequences of the invalidation of the July 1, 1998, prevailing rates of wage as amended by *Oregon Determination 98-02*, effective October 1, 1998."

---

[2] BOLI does not dispute that the prevailing wage rates adopted in the February 1998 and July 1998 publications are "rules" within the meaning of ORS 183.310(8).

On December 29, 1998, petitioners filed two additional petitions for review—one challenging the validity of Temporary Rule OAR 839-016-0700 and the other challenging the validity of Temporary Rule OAR 839-016-0705.

On January 6, 1999, BOLI adopted a permanent rule, OAR 839-016-0700, that repealed both of the challenged temporary rules and declared that, for work performed in the period beginning January 15, 1999, the prevailing wage rates were those published in a new version of "Prevailing Wage Rates on Public Works Contracts in Oregon," dated January 15, 1999.

On January 15, 1999, petitioners filed a complaint asking the Marion County Circuit Court to enjoin BOLI from enforcing the Commissioner's January 6, 1999, prevailing wage rates. Petitioners argued that enforcement of the rule would result in irreparable harm because many of its members would receive lesser wages due to the inaccuracy of the wage rates in the rule. Ultimately, the court dismissed the complaint for lack of subject matter jurisdiction on the basis that, under ORS 183.400, the Court of Appeals has exclusive jurisdiction to determine the validity of agency rules. A judgment was entered dismissing the case with prejudice, and petitioners immediately filed a notice of appeal from that dismissal. Thereafter, on February 19, 1999, petitioners filed a petition for judicial review of OAR 839-016-0700 pursuant to ORS 183.400.

Thus, by mid-February 1999, petitioners had five separate actions—four petitions for review of prevailing wage rates and one appeal relating to enforcement of prevailing wage rates—pending before this court. BOLI moved to dismiss the petitions for review of its July 1998 wage rates and the two temporary rules as moot, arguing that those rates had been superseded by BOLI's January 15, 1999, rule adopting prevailing wage rates.[3] We denied BOLI's motions to dismiss petitioners' rule challenges as moot "with leave to renew in the briefs," but granted petitioners' motion to consolidate all five pending actions for briefing and argument.

---

[3] BOLI did not move to dismiss the petition for review of the January 1999 prevailing wage rates because those rates were still in effect.

On June 16, 1999, while briefing in the consolidated case was pending, BOLI adopted OAR 839-016-0700. That rule became effective on July 1, 1999, and provided that the prevailing wage rates for work performed after that date were those stated in a new July 1, 1999, edition of "Prevailing Wage Rates On Public Works Contracts in Oregon." There is no indication in the record that petitioners filed a challenge to the July 1, 1999, prevailing wage rates.

On review of the five consolidated actions described above, petitioners raise 11 assignments of error. Petitioners' first 10 assignments of error repeat the same two assertions with respect to each of the five challenged wage rates—*viz.*, the rates published on February 15 and July 1, 1998, the rates adopted by temporary OAR 839-016-0700 on October 29, 1998, the rates adopted by temporary OAR 839-016-0705 on November 2, 1998, and the rates adopted by permanent OAR 839-016-0700 on January 15, 1999. Specifically, petitioners contend that, in adopting each of those sets of wage rates, BOLI (1) failed to give notice before their adoption, as required by its own rule, OAR 839-016-0000; and (2) exceeded its statutory authority by

> "collapsing occupation classifications, utilizing multi-district averaging, utilizing the 2% or 200 hour policy, averaging the hourly wage rates of workers employed on highway construction projects with the hourly wage rates of workers employed on parking lot construction projects, failing to survey owner-operator trucking firms, and separating occupations in heavy construction with occupations in highway construction."

Petitioners' eleventh assignment relates only to the circuit court's dismissal of petitioners' request for an injunction barring BOLI from enforcing the prevailing wage rates adopted by rule on January 6, 1999. Petitioners assert that the circuit court erred in dismissing their request for injunctive relief for lack of subject matter jurisdiction.

■ Before turning to consider whether petitioners' challenges to the various sets of prevailing wage rates are moot, we first address the separate question of whether the circuit court erred in dismissing petitioners' January 15, 1999, complaint requesting that BOLI be enjoined from enforcing the

wage rates adopted on January 6, 1999. The circuit court dismissed petitioners' complaint on the ground that, pursuant to ORS 183.400(1), the Court of Appeals has exclusive jurisdiction over challenges to the validity of administrative rules. We conclude that the trial court did not err. Here, petitioners' request for an injunction barring enforcement of OAR 839-016-0700 was nothing more than a challenge to that rule's validity, and the trial court therefore lacked subject matter jurisdiction. *See Alto v. State Fire Marshal*, 319 Or 382, 390-95, 876 P2d 774 (1994) (circuit court lacks jurisdiction to enjoin enforcement of agency rules when essence of action is a challenge to the validity of agency rules; pursuant to ORS 183.400, Court of Appeals has exclusive jurisdiction over direct challenges to validity of agency rules); *Bartholomew v. Pearce*, 131 Or App 658, 661, 886 P2d 1060 (1994) (where plaintiff's claim for declaratory relief was, in essence, a direct challenge to agency rules, circuit court lacked jurisdiction; jurisdiction over direct rule challenges lies exclusively with the Court of Appeals).[4] Accordingly, we affirm the circuit court's dismissal of CA A105305.

■     We now turn to petitioners' direct rule challenges. As noted, petitioners' principal assignments of error with respect to the validity of the challenged wage rates—*viz.*, the rates published in February and July 1998, the rates adopted by temporary OAR 839-016-0700 on October 29, 1998, the rates adopted by temporary OAR 839-016-0705 on November 2, 1998, and the rates adopted by permanent OAR 839-016-0700 on January 6, 1999—assert that, in adopting each of those sets of wage rates, BOLI failed to give notice before

---

[4] ORS 183.400 provides, in relevant part:

"(1) The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases. * * *

"(2) The validity of any applicable rule may also be determined by a court, upon review of an order in any manner provided by law or pursuant to ORS 183.480 or upon enforcement of such rule or order in the manner provided by law."

In *Alto*, the Supreme Court interpreted ORS 183.400 to mean that a case involving a challenge to the validity of an administrative rule may occur in a court other than the Court of Appeals *only* if it involves the "enforcement" of that rule under ORS 183.400(2). 319 Or at 390-95. Conversely, when the essence of an action is a facial challenge to the validity of an agency rule, the Court of Appeals has exclusive jurisdiction under ORS 183.400(1). *Id.*

adoption of the rates and exceeded its statutory authority in using certain methods to calculate the rates.

BOLI's threshold response is that we need not reach the merits of petitioners' procedural and substantive challenges to the various sets of prevailing wage rates because petitioners' challenges are moot. BOLI points out that *none* of the prevailing wage rates challenged by petitioners in this case is currently in effect, because the prevailing wage rates adopted on July 1, 1999, superseded all prior prevailing wage rates. Thus, BOLI argues, any decision regarding the validity of the prevailing wage rates challenged by petitioners would have "no practical effect on the parties' rights" and petitioners' challenges are therefore moot.[5] For the reasons explained below, we agree.

■ *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993), prescribes a two-part inquiry into whether a case is justiciable. The first question is whether a case presents an actual and substantial controversy between parties having adverse legal interests. *Id.* The second question is whether the court's decision will have a practical effect on the rights of the parties, *i.e.*, whether the case is moot. *Id.* The Supreme Court recently summarized the doctrine of mootness:

"Appellate courts are prohibited from deciding abstract, hypothetical, or contingent questions. A court's decision on a matter must have some practical effect on the rights of the parties to the controversy. Even if a case otherwise is justiciable, if the court's decision 'no longer will have a practical effect on or concerning the rights of the parties,' then the matter will be dismissed as moot. For example, a case becomes moot when an event occurs that 'render[s] it impossible for the court to grant effectual relief.' " *Hamel v.*

---

[5] BOLI also argues that the October and November 1998 temporary rules challenged by petitioners "expired by force of law even if not expressly superseded by the permanent rates adopted effective January 15, 1999. *See* ORS 183.335(6)(a) (temporary rules 'may be effective for a period of time not longer than 180 days')." Therefore, BOLI argues, petitioners' challenges to the temporary rules are moot because "even if all intervening prevailing wage rates were invalidated, the challenged temporary rates could never spring back into effect." For purposes of our mootness analysis, we need not determine whether the two temporary rules expired by force of law or were superseded by the January 1999 rates. Petitioners do not dispute that the temporary rules are no longer in effect and do not argue that they would "spring back into effect."

*Johnson*, 330 Or 180, 184, 998 P2d 661 (2000) (brackets in original; citations omitted).

*Barcik v. Kubiaczyk*, 321 Or 174, 895 P2d 765 (1995), is illustrative. There, several high school seniors challenged school district regulations that authorized school administrators to review and censor student publications and to discipline students who distributed or published material in violation of the regulations. Despite the fact that the seniors had graduated at the time of its ruling, the trial court entered a judgment declaring that the students' rights to free speech had been violated. The Supreme Court reversed, concluding that, under Oregon law, the plaintiffs' claims for declaratory and injunctive relief became moot upon their graduation from high school. The court reasoned:

"On the date of the circuit court's judgment, no Senior plaintiff * * * had any right or claim that would be affected by a declaratory judgment. Senior plaintiffs suffered no continuing harm from the alleged past deprivation of their Article I, section 8, rights. Similarly, because no Senior plaintiff * * * had any right that was being violated at the time the circuit court entered judgment, there was nothing for the circuit court to enjoin with regard to Senior plaintiffs. Senior plaintiffs' claims were moot[.]" *Barcik*, 321 Or at 187.

Oregon courts have applied the mootness doctrine in challenges to administrative rules on several occasions. For example, in *Hay v. Dept. of Transportation*, 301 Or 129, 719 P2d 860 (1986), the Supreme Court concluded that a challenge to an expired rule was moot regardless of the fact that the agency might readopt the challenged rule in the future. Similarly, we dismissed as moot a challenge to a temporary rule that had been replaced by a permanent rule, reasoning that "[t]he rule petitioners attack is no longer in existence, and our decision would 'merely resolve an abstract question without practical effect.' " *McKnight v. LCDC*, 69 Or App 642, 687 P2d 170 (1984), *rev den* 299 Or 522 (1985). Citing *Barcik* and *Hay*, BOLI argues that, because the challenged rules are no longer in effect, petitioners' challenges to the validity of the various sets of prevailing wage rates are moot.

Petitioners respond that their rule challenges are not moot. Before addressing the substance of petitioners'

position, it is useful to clarify what petitioners are *not* arguing. First, petitioners do not dispute that the various rules that they challenge have been superseded by the July 1, 1999, prevailing wage rates and are thus no longer in effect. Second, petitioners do not dispute that, even if we declared all of the challenged prevailing wage rates invalid, ORS 279.350(2) would bar them from collecting lost wages. *See* ORS 279.350(2) ("After a contract for a public work is executed with any contractor * * * the amount of the prevailing rate of wage shall not be subject to attack in any legal proceeding by any contractor or subcontractor in connection with that contract."). Thus, petitioners effectively concede that, even if we were to declare any of the challenged wage rates invalid, that determination would not have the "practical effect" of enabling them to recoup any wages to the extent that past wage rates were erroneously fixed.

Petitioners' anti-mootness argument is, instead, that the challenged now-superseded rates have a continuing "ripple effect," skewing the determination of present and future wage rates. In petitioners' view, the 1998 rates indirectly formed the basis for the July 1999 prevailing wage rates and, consequently, a declaration that the challenged rates were invalid would have the "practical effect" of enabling petitioners to bring a successful challenge to the July 1999 prevailing wage rates. In particular, petitioners' position depends on a series of interdependent premises concerning the operation of the prevailing wage rate statutory scheme in general and BOLI's conduct in adopting the 1999 prevailing wage rates specifically:

(1) In determining prevailing wage rates, BOLI "shall rely on an independent wage survey." ORS 279.350; ORS 279.359.

(2) Pursuant to ORS 279.359, BOLI's independent wage survey entails asking workers in each district and in each occupation how much they are getting paid.

(3) When BOLI did its wage survey for purposes of determining the July 1999 prevailing wage rates, the workers it surveyed were getting paid under contracts that had necessarily incorporated the prevailing wage rates effective at that time, *i.e., one of the challenged 1998 prevailing wage rates.*

(4) Therefore, the challenged prevailing wage rates adopted by BOLI in February 1998, July 1998, October 1998, and November 1998 formed the "empirical basis" of BOLI's 1999 wage survey. Put another way, the challenged prevailing wage rates "corrupted" the July 1999 wage rates by improperly lowering pay rates that, via the survey results, formed the basis for the July 1999 rates.

(5) Given the "ripple effects" that the 1998 rates have had on the current 1999 rates, a declaration by this court that the 1998 rates were invalid would have the "practical effect" of enabling petitioners to bring a successful challenge to the July 1999 rates. According to petitioners, "the corruption of the 1999 data due to defects in the 1998 rules can *only* be addressed through the challenges to the 1998 rules."

BOLI offers two responses to petitioners' "ripple effect" argument. First, BOLI asserts that nothing in the reviewable record corroborates petitioners' contention that the July 1999 prevailing wage rates were "tainted" by the 1998 prevailing wage rates. *See* ORS 183.400(3) (judicial review of a rule shall be limited to examination of the rule itself, the statutes authorizing the rule, and all documents necessary to demonstrate compliance with applicable rule-making procedures). Second, citing *Hay* and *Edmunson v. Dept. of Ins. and Finance*, 314 Or 291, 838 P2d 589 (1992), BOLI argues that, because the July 1999 rules are not the subject of a challenge, invalidation of the now-superseded challenged wage rates would have no "practical effect on the rights of the parties" and petitioners' challenges are therefore moot. In BOLI's view, even if this court were to declare the challenged prevailing wage rates invalid, such a declaration would not invalidate the existing July 1999 prevailing wage rates, and thus would not redress petitioners' alleged continuing grievances.

We agree with BOLI's second argument. Even assuming, without deciding, that the 1998 prevailing wage rates continue to have some "collateral effects" on petitioners by virtue of their influence on the current July 1999 rates, we conclude that petitioners' challenges are moot because it is " 'impossible for [us] to grant effectual relief.' " *Hamel*, 330 Or

at 184 (quoting *Greyhound Park v. Ore. Racing Com.*, 215 Or 76, 79, 332 P2d 634 (1958)). *See also Edmunson*, 314 Or at 295.

*Edmunson* is dispositive. There, the petitioner initiated a proceeding in this court, pursuant to ORS 183.400, challenging the validity of two temporary rules adopted by the Workers' Compensation Division concerning disability rating standards for workers' compensation claims. The temporary rules were adopted in September and November 1990 as emergency provisions, and both were to expire in May 1991. Petitioner initiated his challenge in December 1990, but on March 26, 1991, before either of the challenged temporary rules had expired by its own terms, the Department adopted the following permanent rule:

> "(1)   These rules apply to the rating of permanent disability pursuant to [ORS] chapter 656 and shall be applied to all claims closed on or after April 1, 1991 * * *.
>
> "(2)   For claims in which the worker was medically stationary after July 1, 1990, the Appellate Unit *shall apply the disability rating standards in effect on the date of issuance of the Determination Order or Notice of Closure.*" OAR 436-35-003 (1991) (emphasis added).

Following the promulgation of the permanent rule, the Department moved to dismiss the petitioner's rule challenges as moot on the ground that the temporary rules had been superseded by the new permanent rule and therefore had no continuing effect of their own. We granted that motion. The petitioner appealed to the Supreme Court, arguing:

> "(1) The permanent rules purport to direct application of the same substantive legal standards that previously were made applicable to claims under the temporary rules—that is the meaning and consequence of the use of the phrase 'in effect' in permanent OAR 436-35-003(2). (2) But those temporary rules *never were 'in effect,'* because they were not validly adopted. (3) Thus, a challenge to the temporary rules has continuing validity to the extent that the outcome of the challenge will determine what set of rules is cross-referenced by the pivotal phrase in OAR 436-35-003(2)." *Edmunson*, 314 Or at 295 (emphasis in original).

The Supreme Court flatly rejected the petitioner's argument and affirmed our dismissal of the petitions as moot:

> "That argument demonstrates its own error. Whatever is cross-referenced by the phrase, 'in effect,' in OAR 436-35-003(2), *it is that cross-reference in the present rule that establishes the applicable law.* That is, *all* claims are governed by the *present permanent rule*, not the former temporary ones. If there is an invalid or indeterminate cross-reference in the present rule, that is a problem with the present rule, not with any past rules.

> "The former temporary rules have now passed out of existence, and no one presently purports to be acting pursuant to any power originating in them. A challenge to those temporary rules is, therefore, moot." *Id.* (emphasis in original).

■ We understand *Edmunson* to hold that a challenge to the validity of an expired or superseded rule is not "kept alive" for mootness purposes by the fact that the superseded rule may have some continuing effect on the application or validity of a current rule. Rather, under *Edmunson*, a challenge to a superseded rule is moot even when the superseded rule has some continuing effect on the application of the current rule because any harm allegedly caused by the invalidity of the superseded rule is, in actuality, "a problem with the present rule." Consequently, in such circumstances, an appellate court can grant "effectual relief," *Hamel*, 330 Or at 184, only via a direct challenge to the *current* rule.[6]

*Edmunson* is controlling here. Even assuming that the challenged rules were invalidly promulgated and that BOLI's determination of the July 1999 prevailing wage rates was tainted by those "invalid" rates, petitioners' challenges are moot. None of the sets of prevailing wage rates that petitioners challenge is currently in effect. Whatever continuing effects the challenged rates have on petitioners arise from the *current* prevailing wage rates. Accordingly, our consideration

---

[6] Implicit in the court's reasoning is the notion that, where challenged rules have "passed out of existence * * * and no one presently purports to be acting pursuant to any power originating in them," *Edmunson*, 314 Or at 295, an appellate court's declaration that such rules are invalid would have no "practical effect" on the parties' rights.

of the validity of the prevailing wage rates challenged by petitioners would merely resolve an abstract question without practical effect. *See Edmunson,* 314 Or at 295; *State ex rel Juv. Dept. v. Holland,* 290 Or 765, 767, 625 P2d 1318 (1981) ("A case becomes moot * * * when, because of a change of circumstances prior to the appellate decision, the decision would resolve merely an abstract question without practical effect.")

Petitioners' argument that their challenges are not moot because a declaration that the 1998 rates were invalidly promulgated would have the "practical effect" of enabling them to bring a successful challenge to the July 1999 or current prevailing wage rates is unavailing. The mere possibility that our invalidation of the 1998 rates *might* have the practical effect of informing another court's consideration of the validity of the current prevailing wage rates in a future action that petitioners *could* file, but have not filed—and may never file—is not "effectual relief" for purposes of mootness. Accordingly, petitioners' challenges to the superseded prevailing wage rates are dismissed as moot.

Judgment of the circuit court in A105305 affirmed; judicial review of A103356, A104745, A104762 and A105386 dismissed as moot.