Argued and submitted December 12, 2000, affirmed February 14, 2001

NORTHWEST PERMASTORE SYSTEMS, INC.,
*Petitioner,*

*v.*

BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

(40-98; CA A105840)

18 P3d 496

Tamara H. Lewis argued the cause for petitioner. With her on the brief were Robert L. O'Halloran and Allen, Yazbeck, O'Halloran & Hanson, P.C.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Ceniceros, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner seeks review of an order of the Bureau of Labor and Industries (BOLI) determining that it violated the prevailing wage rate (PWR) statutes, ORS 279.348 *et seq.*, by failing to pay its employees the appropriate PWR for erection of a glass-fused-to-steel, bolted-together water storage tank. Before the agency and again on appeal, petitioner argued that BOLI erroneously classified such work as "boilermaker" work, and that it should instead be classified as "laborer 2" work. In its final order on reconsideration, BOLI held that petitioner's challenge was barred by ORS 279.350(2), which prohibits any attack on the "amount of the prevailing rate of wage" after a contract for a public works has been executed or work commenced. We agree and affirm.

The following material facts, as found by BOLI, are uncontroverted: In August 1996, petitioner bid on and received a subcontract to erect a type of water tank known as a standpipe[1] in connection with the City of Yoncalla Standpipe and Waterline Extension Project. The contract documents specified that the standpipe was to be a "glass coated, bolted steel water storage tank" manufactured by A.O. Smith Harvestore Products, Inc., or some other "glass-fused-to-steel tank" that met the contract specifications. Installation of A.O. Smith tanks involves a proprietary process, and the company thus requires that its tanks be installed only by certified builders who have received training from the company in how to erect and maintain the glass-fused-to-steel structures.

Petitioner was the only bidder for the Yoncalla standpipe erection subcontract and many of its employees have completed the prescribed training. Petitioner is the only licensed dealer of A.O. Smith products in Oregon.

Petitioner's employees performed standpipe erection work on the project in January 1997. Although BOLI had previously determined that standpipe erection work was properly classified as "boilermaker" work for PWR purposes, petitioner was unaware of that classification at the time of

---

[1] A standpipe is a water tank with a height greater than its diameter.

the work. Instead, petitioner believed that the work was properly classified for PWR purposes as "laborer 2" or "ironworker" work. Consequently, in accordance with its prior practice, petitioner paid its workers according to a split-wage scheme by which they were compensated at the "laborer 2" PWR for approximately 75 percent of their time and as "ironworkers" for the remaining 25 percent.[2]

In April 1997, BOLI initiated an investigation of petitioner's payroll records in response to a complaint that petitioner had paid the incorrect PWR on the Yoncalla project. With its initial notice of complaint letter to petitioner, BOLI included a page from the "Index of Job Classifications to Supplement Prevailing Wage Rates for Public Works Contracts in Oregon" (Index), which expressed BOLI's determination that "standpipe repair and construction" was classified as "boilermaker" work for purpose of the PWR laws. Petitioner had never seen the Index before BOLI's April letter.[3] After further investigation, BOLI issued a Notice of Intent to Assess Civil Penalties, alleging that petitioner had committed several violations of the PWR laws. At the ensuing contested case hearing, petitioner argued that it had in fact paid the appropriate PWR because BOLI 's classification of the subject work was incorrect.[4]

---

[2] Petitioner first adopted that split-wage scheme on another project in about 1993. At the time of the Yoncalla work, the applicable PWR for "laborer 2" was $17.44/hour, with a fringe benefits rate of $7.06/hour, and the PWR for "ironworker" was $20.85/hour, with a $9.77/hour fringe benefit. In comparison, the "boilermaker" PWR was $23.57/hour, with a $8.76/hour fringe benefit.

[3] In its final order on reconsideration, BOLI determined that the Index is not an internal agency document and is generally made available to members of the public upon request. BOLI also noted that the PWR booklet, which specifies the PWR for various job classifications used in the construction industry and is distributed to contractors throughout the state, directs employers to contact BOLI with questions concerning classification of work. BOLI personnel use the Index when responding to such inquiries. Here, petitioner contacted BOLI's prevailing wage rate coordinator in the spring of 1997, after work on the project was completed and the investigation initiated, and was informed that the trade classification for standpipe erection was "boilermaker." Given the agency's established practice of referring to the Index in responding to employer inquiries, BOLI found that had petitioner called before submitting the Yoncalla project bid and executing the subcontract, it would have discovered that the standpipe erection workers were classified as "boilermakers." There is substantial evidence in the record to support that finding.

[1] At the relevant time, and pursuant to ORS 279.348(1) (1995), BOLI relied on United States Department of Labor findings, local collective bargaining

In its Final Order on Reconsideration, however, BOLI determined that petitioner's challenge was barred by ORS 279.350(2), and that, even if it were not, BOLI had properly classified the tank erection workers as boilermakers. BOLI determined that petitioner had violated the PWR laws, and imposed civil penalties of $2,524.29.

■      On review, petitioner assigns error to, *inter alia*, BOLI's determination that ORS 279.350(2) precluded petitioner's challenge to the labor classification.[5] That statute provides:

> "After a contract for a public works is executed with any contractor or work is commenced upon any public works, the amount of the prevailing rate of wage shall not be subject to attack in any legal proceeding by any contractor or subcontractor in connection with that contract." ORS 279.350(2).

In its final order on reconsideration, BOLI found that, before the execution of the Yoncalla project contract, the agency had determined, through the Index of Prevailing Practice, that standpipe erection work was to be classified as "boilermaker" work for purposes of the PWR laws. BOLI concluded that petitioner's argument that that determination was faulty "is precisely the type of legal challenge foreclosed by ORS 279.350(2)." We agree.

---

agreements and union practices to determine prevailing wage rates and labor classifications. Petitioner contended, *inter alia*, that: (1) A.O. Smith tank dealers did not pay "boilermaker" wages for standpipe erection work; and (2) because petitioner was the only A.O. Smith dealer in Oregon and had constructed most of the bolted-together municipal water tanks in Oregon during the previous 10 years, petitioner's use of the "split-wage" system reflected common practice in the industry. Given our conclusion that petitioner's challenge to BOLI's labor classification is barred by ORS 279.350(2), a more complete exposition of the details of the parties' dispute over the correct classification is immaterial and would benefit neither the bench nor bar. In all events, any exposition of that issue may well be academic at this point: Statutory changes effective in 1997 direct that labor classifications and wage rates now be based on state-wide wage surveys. *See* ORS 279.348(1) (1999); Or Laws 1997, ch 810, §1(1), 2(1); *Joint Council of Teamsters #37 v. BOLI*, 168 Or App 398, 409, 11 P3d 247, *rev den* 331 Or 429 (2000) (explaining BOLI's process for adopting PWRs).

[5] Because petitioner concedes that it did not pay its workers the "boilermaker" rate, resolution of the classification issue is dispositive, and we need not discuss petitioner's other assignments of error.

The plain language of ORS 279.350(2) bars an attack on the amount of the prevailing rate of wage after a public works contract has been executed or work commenced. By asserting that the proper PWR was that for laborers or ironworkers, rather than boilermakers, petitioner sought here to challenge the amount of wage it was responsible for paying its workers under that contract. However, petitioner did not raise that challenge until after the contract had been fully executed. Consequently, that challenge is barred by ORS 279.350(2).

■       Petitioner attempts to avoid the statutory bar by styling its argument as a challenge to the *classification* of the work, rather than an attack on the appropriate hourly wage for that classification. Petitioner claims that a "classification challenge * * * is not the same as a rate challenge" and that the statute bars wage rate challenges only, not challenges to the classification of work.

As BOLI correctly observed in its final order, however, "classifying the work in its proper trade is equally central to the prevailing wage rate determination as the determination of the wage rate prevailing for that trade." In other words, the "amount of the prevailing rate of wage" is, inextricably, a function of the proper classification of the work. The statutory definition of "prevailing rate of wage" expresses that relationship:

> " 'Prevailing rate of wage' means the rate of hourly wage * * * paid in the locality to the majority of workers employed *on projects of similar character in the same trade or occupation,* as determined by the Commissioner of the Bureau of Labor and Industries." ORS 279.348(1). (Emphasis added.)

A post-contract challenge to the classification, *i.e.,* BOLI's determination of which types of work constitute the "same trade or occupation," is thus, by definition, a challenge to the "prevailing rate of wage" applicable to the work under the contract. The two are inextricably intertwined in that a successful challenge to the classification will result in a different amount paid to the workers. That is precisely the outcome

that petitioner seeks here—and precisely the outcome that the statute is designed to avoid.

■     Legislative history corroborates that understanding. The provision was proposed as SB 208 (1981) at the request of the Department of Justice in order to remove a source of litigation then facing BOLI: Successful bidders on public works projects were signing contracts based on their bids and then litigating the prevailing wage rate. At a Senate committee hearing on the bill, Bruce Hugo, executive assistant to then-Labor Commissioner Mary Wendy Roberts, explained that the agency sought to prevent contractors from using such litigation to undermine the public bidding process by attempting to pay their workers a lower rate than that specified in the bid documents:

> "This bill * * * simply prohibits the rates determined by the Commissioner from being attacked *in connection with a particular contract after the contract is awarded.* * * * The intent of this section is to prohibit contractors from claiming that the PWR is other than that determined by the Commissioner. A bidder is aware of the prescribed prevailing rate at the time he enters the contract. If he should disagree with the public's rate, he should seek redress before he enters the contract. This bill keeps the goal post in the same place throughout the game." Testimony, Senate Labor Committee, SB 208, January 27, 1981, Tape 6, Side A at 015 (emphasis added).

Commissioner Roberts testified similarly about the "level playing field" the bill aimed to protect:

> "They [the contractors] know everybody's bidding using the same wage scale—that which has been determined by the Commissioner. One contractor gets the contract, and then, after the contract is signed, says 'Uh uh, I don't have to pay that wage, because I'm going to argue that I'm going to dispute what the prevailing wage rate is.' And so all the other contractors that have bid on that have all used the same wages. This one enters into the bidding on the same basis and then wants to change what the rate is to a lower rate. * * * It should, really should be clarified what the rules of the game are, and this is really a way of doing that." Testimony, Senate Labor Committee, SB 208, January 27, 1981, Tape 6, Side A at 039.

That history confirms that the legislature's intent in enacting ORS 279.350(2) was to avoid collateral attacks on the amount of wage to be paid on any particular job by a contractor after winning the bid. The legislature was attempting to prevent successful bidders from "moving the goal posts" after the conclusion of the public bidding process, when the amount of wage was known at the time of the bids.

Thus, the statutory bar applies regardless of whether the post-contracting collateral attack on the PWR is styled as a "rate" or "classification" challenge. In either event, the challenge is properly precluded as an attack on "the amount of the prevailing rate of wage."

BOLI did not err in determining that petitioner's challenge constitutes an impermissible "attack on the amount of the rate of prevailing wage" that is barred by ORS 279.350(2).

Affirmed.