Argued and submitted September 7, judicial review dismissed as moot
November 28, 2001

# Kevin KEENEY,
### *Petitioner,*

*v.*

# UNIVERSITY OF OREGON,
### *Respondent.*

## C-546-97-98; A104503

36 P3d 982

John R. Parrott argued the cause for petitioner. With him on the briefs were Kenneth A. Morrow and Morrow, Monks & Sharp, P.C.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

HASELTON, P. J.

---

* Deits, C. J., *vice* Warren, S. J.

## HASELTON, P. J.

Petitioner, a former student at the University of Oregon, seeks judicial review of the University's April 1999 final order dismissing allegations that he failed to comply with the terms of a February 1997 disciplinary order but declining to address his collateral attack on the February 1997 order. Petitioner argues that the February 1997 disciplinary order was void because it was not issued in accordance with the University's governing statutes and administrative rules. The University concedes that, in the abstract, it lacked the authority to issue the February 1997 order but asserts that we cannot reach that issue because this dispute is moot. We agree with the University that petitioner's claim is moot. Accordingly, we dismiss the petition for judicial review.

The material facts are not in dispute. On December 6, 1996, Elaine Green, the University's Associate Dean of Student Life, sent petitioner four letters notifying him that another student had accused him of making harassing telephone calls and that, consequently, four complaints had been filed against him for unwanted sexual behavior, stalking, and sexual harassment. OAR 571-021-0030(20) (sexual behavior); OAR 571-021-0030(21) (stalking); OAR 571-021-0030(22) (sexual harassment). In the letters, Green also informed petitioner that he must meet with her by December 20, 1996, to discuss the accusations or risk having the dispute summarily resolved without his input.

On December 13, 1996, petitioner met with Green to discuss the complaints. During that meeting, petitioner agreed to have the charges against him resolved informally pursuant to OAR 571-021-0045.[1] Thereafter, petitioner

---

[1] OAR 571-021-0045 states, in relevant part:

"(1) The Coordinator shall meet with the student (and counsel, if the student elects), inform the student of the student's options and rights, and take any of the following actions with the student's agreement:

"(a) Make findings of fact and determine whether or not the student has violated the Code;

"(b) Dismiss the case;

retained counsel. On January 22, 1997, petitioner's counsel wrote a letter to Green withdrawing petitioner's December 1996 consent to informal resolution of the complaints.

Despite that letter, Green did not refer the case for formal administrative resolution. Instead, on February 6, 1997, Green sent a letter order to petitioner "inform[ing]" him that, "[a]s a result of our conference, you have been found guilty" of violating the University Student Conduct Code. In that order, Green summarily imposed several sanctions on petitioner, including a "community service" sanction requiring petitioner to send a letter of apology to the complaining student, to meet with sexual harassment counselors, and to "write a 5 page paper on the typical effects of such conduct on the victims." Petitioner did not timely seek judicial review of that order.[2] Instead, on March 31, 1997, petitioner gave the University notice pursuant to the Oregon Tort Claims Act, ORS 30.275, of his intent to sue Green and her superiors for Green's allegedly tortious conduct and for damages based on 42 USC § 1983.

On December 18, 1997, Green sent petitioner notice that he had allegedly failed to complete the "community service" required by the February 1997 order and had, thus, violated OAR 571-021-0030(16), which authorizes student disciplinary action for "[f]ailure to comply with the terms of any

---

"(c) Refer the student for counseling;

"(d) Impose any sanction listed in OAR 571-021-0038 of the Student Conduct Code except expulsion, suspension, or negative notation on transcript;

"(e) Refer the student to the referee for administrative disposition of the case.

"(2) With or without the student's agreement, the Coordinator may refer the case to a hearings panel and give the student proper notice as specified in ORS 183.415.

"(3) There shall be no appeal of sanctions imposed by the Coordinator."

[2] On September 5, 1997, petitioner sought judicial review in Lane County Circuit Court of the February 1997 order pursuant to ORS 183.484 (judicial review of orders in other than contested cases). The University moved to dismiss on the ground that the petition was untimely under ORS 183.484(2) (petitions for review of orders in other than contested cases must be filed within 60 days following the date of the order). The trial court agreed and, citing *Ososke v. DMV*, 320 Or 657, 661, 891 P2d 633 (1995) (untimely filing of a petition for review from an administrative ruling is a jurisdictional defect precluding judicial review), issued an order dismissing the petition on December 17, 1997. The court entered judgment in the matter on January 8, 1998, and petitioner did not appeal from that judgment.

disciplinary sanction imposed in accordance with the Student Conduct Code."[3] On May 4, 1998, a University hearings panel conducted a show cause hearing regarding the allegation that defendant had failed to comply with the terms of the February 1997 disciplinary order.

■ At that hearing, petitioner raised two alternative defenses pursuant to OAR 571-021-0030(16).[4] First, petitioner asserted that he did not violate OAR 571-021-0030(16), because he had, in fact, complied with the terms of his "community service" obligation.[5] Second, petitioner asserted that, in all events, he could not be liable for non-compliance with the February 1997 order because that order was not lawfully issued.[6] To support his first argument, petitioner offered copies of the letter of apology and of his paper

---

[3] Petitioner sought judicial review of the December 18 notice in Lane County Circuit Court, on the ground that it constituted an interlocutory order subject to judicial review under ORS 183.480(3) (interlocutory order reviewable "upon [a] showing that the agency is proceeding without probable cause, or that the party will suffer substantial and irreparable harm if interlocutory relief is not granted"). Petitioner alleged that the February 1997 order "was an invalid agency final order in other than a 'contested case.' " Petitioner further asserted that the University had no authority to enter the February 1997 order and that the order was subject to collateral attack. Accordingly, petitioner asked the court to invalidate the February 1997 order and to conclude that "no disciplinary sanction has been imposed against petitioner that is in accordance with the Student Conduct Code." The court, however, determined that it did not have jurisdiction over the interlocutory order (although the exact bases for the court's ruling in that regard are not apparent from the record) and dismissed the petition. Petitioner did not appeal from that judgment of dismissal.

[4] OAR 571-021-0030 provides, in part:

"Disciplinary action may be initiated by the University and sanctions imposed against any student or student organization found guilty of committing, attempting to commit, or intentionally assisting in the commission of any of the following prohibited forms of conduct:

"* * * * *

"(16) Failure to comply with the terms of any disciplinary sanction imposed in accordance with the Student Conduct Code."

[5] The complaint regarding petitioner's failure to comply with the terms of his community service alleged that he had failed to write a letter of apology to the recipient of the allegedly harassing telephone calls, had not met with sexual harassment counselors, and had not written the five-page paper describing the typical effects of sexual harassment on victims. At the hearing, petitioner produced the letter of apology and the five-page paper. A subsequent inquiry by the hearings panel apparently revealed that petitioner had also met with the harassment counselors.

[6] Specifically, petitioner challenged the validity of the February 1997 order on the grounds that the University lacked "subject matter jurisdiction" to discipline him for events that allegedly occurred off campus and that it lacked "personal

describing the effects of sexual harassment. On June 6, 1998, the hearings panel accepted petitioner's first argument and issued an order dismissing the December 1997 complaint on the ground that petitioner "has satisfactorily completed the community service sanctions against him in all outstanding cases, and is therefore not guilty of violating OAR 571-[0]21-[0]030(16)." Given that disposition, the hearings panel did not reach or resolve petitioner's alternative, collateral challenge to the February 1997 order.

Notwithstanding the hearings panel's dismissal of the enforcement action, petitioner requested University appeals board review of the hearings panel order. In particular, petitioner asked the appeals board to resolve his collateral challenge to the February 1997 disciplinary order. The appeals board rejected that argument and issued a final order that affirmed, and substantively mirrored, the hearings panel's ruling. In December 1998, petitioner filed a petition for judicial review with this court.[7]

In September 2000, the University moved to dismiss petitioner's petition on the ground that any dispute was rendered moot by petitioner's graduation in Spring 1999 and

jurisdiction" over him because he did not consent to informal resolution of the allegations against him. Given our disposition, we need not address whether, or to what extent, concepts of "jurisdiction" in their commonly understood judicial sense pertain to this administrative context. Suffice it to say that the University has broad *authority* to discipline students (*i.e.*, petitioner) for actions against another student that affect that student's academic objectives. ORS 352.010 (control of "discipline" vested in University faculty); ORS 352.004 (University president vested with authority over "practical affairs" of the University); OAR 571-021-0015 ("students" subject to discipline for violation of the Student Conduct Code); OAR 571-021-0005 (disciplinary sanctions appropriate where, *inter alia*, a student's conduct materially interferes with either the educational objectives or the health and safety of a member of the University community). In addition, we treat the University's concession that it lacked "personal jurisdiction" over petitioner as a concession that the February 1997 disciplinary order was not entered in accordance with the Student Conduct Code. *Cf. State ex rel Juv. Dept. v. Pfaff*, 164 Or App 470, 478-79, 994 P2d 147 (1999), *rev den* 331 Or 193 (2000) (appellate court not required to accept correctness of respondent's concession of issue of law before the trial court. Rather, court must determine whether trial court's ruling was erroneous for the reasons appellant urges).

[7] Thereafter, the University sought to withdraw the original appeals board order affirming the hearings panel's ruling and to issue a new final order. We allowed the University's motion, and the University issued its amended final order in April 1999. Petitioner, in response, filed a timely amended petition for judicial review.

that the controversy was therefore nonjusticiable. Petitioner responded by arguing that the dispute is justiciable notwithstanding the appeals board's determination that he had not violated the February 1997 order. In particular, petitioner asserts that resolution of his collateral attack on the February 1997 order will have a "practical effect" on the parties' rights because a determination that the 1997 order was invalid may affect: (1) his ability to recover attorney fees in this judicial review; (2) his ability to pursue tort remedies against the University; and (3) his future employability in that potential employers may regard any "black mark" on his academic record adversely. In an order issued October 27, 2000, Chief Judge Deits dismissed the petition for judicial review action. Petitioner sought reconsideration of that order of dismissal. The court's Motions Department granted reconsideration, concluding that there were cognizable collateral consequences flowing from the presence of the February 1997 order in petitioner's disciplinary record, vacated the order, and reinstated petitioner's petition for judicial review.

In his brief on the merits, petitioner reprises and amplifies his earlier arguments that the February 1997 order was invalid and that the University erred in not addressing his collateral challenge to that order in the subsequent disciplinary proceeding. Petitioner also again asserts that the case is justiciable because of the various asserted "practical effects" implicated by his collateral challenge. The University again responds that the case is nonjusticiable. ORAP 7.15(3) (authorizing resubmission of motion challenging the court's jurisdiction). In that regard, the University makes two related arguments. First, the University argues, as it did in its earlier motion, that none of the supposed consequences identified by petitioner will have any practical effect on the parties' interests—and, particularly, that petitioner's graduation rendered this matter moot. Second, the University argues that the circuit court's January 1998 dismissal of petitioner's original direct challenge to the February 1997 order, see 178 Or App at 201 n 2, precludes petitioner's present action to collaterally attack that order.

We begin with mootness. *Berry v. Metro Electrical Joint Apprenticeship*, 155 Or App 26, 29, 963 P2d 712 (1998) ("Where lack of jurisdiction appears at any stage of a case, it

is the duty of the appellate court to proceed no further."). *See also Clawson et ux v. Prouty et ux*, 215 Or 244, 249, 333 P2d 1104 (1959) (a court, confronted with a jurisdictional issue, has authority to determine its own jurisdiction).

In *Barcik v. Kubiaczyk*, 321 Or 174, 182, 895 P2d 765 (1995), the court summarized the principles underlying the justiciability doctrine:

> "Under Oregon law, a justiciable controversy exists when 'the interests of the parties to the action are adverse' and 'the court's decision in the matter will have some practical effect on the rights of the parties to the controversy.' *Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993). 'Cases that are otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties,' are moot. *Id.* at 406."

*See also Utsey v. Coos County*, 176 Or App 524, 32 P3d 933 (2001) (discussing the justiciability doctrine). Because any "practical effect" inquiry is necessarily case-specific, *see Brumnett*, 315 Or at 405 (considering applicable statutes and administrative rules in assessing whether case remained justiciable), we turn to petitioner's argument that a determination of the February 1997 order's validity will have a practical effect because of the potential for attorney fees, the potential effect on subsequent litigation, and the presence of a "black mark" on his academic record.

■     We begin with the asserted "practical effect" on petitioner's alleged potential recovery of attorney fees. We emphasize, at the outset, that petitioner is neither seeking to preserve an already-existing award of attorney fees, nor to challenge an award of attorney fees in favor of the University. Rather, petitioner argues that, if he succeeds in this judicial review in establishing that the February 1997 order was invalid, he will be entitled to an award of attorney fees under ORS 183.497.[8] Thus, petitioner's asserted interest in

---

[8] ORS 183.497 provides, in part:

"(1) In a judicial proceeding designated under subsection (2) of this section the court:

"(a) May, in its discretion, allow a petitioner reasonable attorney fees and costs if the court finds in favor of the petitioner;

"(b) Shall allow a petitioner reasonable attorney fees and costs if the court finds in favor of the petitioner and determines that the state agency acted

attorney fees is inchoate, depending on the possibility that he might prevail on the merits on judicial review. That possibility, without more, is insufficient to render this case justiciable. *Tanner v. OHSU*, 157 Or App 502, 971 P2d 435 (1998).

In *Tanner*, we considered and rejected the argument that, where the merits of a dispute were nonjusticiable (there, moot), a party's potential entitlement to recover fees could compel the court to decide the merits:

> "We assume, for the sake of argument, that plaintiffs are correct that a judgment for attorney fees requires examination of the merits of a case that otherwise has become moot since the entry of the judgment. *Cf. Barcik,* 321 Or at 189 n 10 (declining to address whether a prayer for attorney fees prevents claims from becoming moot on appeal). The fact remains that, in this case, the claims against the state defendants became moot *before* the trial court entered its judgment for attorney fees. Thus, because at the time of the entry of judgment the trial court had no authority to enter *any* judgment against the state defendants, the entire case against those defendants—merits and award of attorney fees—is moot." *Id.* at 512-13 (emphasis in original).

*See also Atiyeh v. State of Oregon,* 326 Or 531, 956 P2d 177 (1998) (dismissal on mootness grounds precluded award of attorney fees); *Kay v. David Douglas Sch. Dist. No. 40,* 303 Or 574, 578, 738 P2d 1389 (1987), *cert den* 484 US 1032 (1988) (attorney fee issue insufficient to preserve justiciability where case mooted before entry of judgment). Thus, in this posture, an alleged entitlement to attorney fees cannot, by

---

without a reasonable basis in fact or in law; but the court may withhold all or part of the attorney fees from any allowance to a petitioner if the court finds that the state agency has proved that its action was substantially justified or that special circumstances exist that make the allowance of all or part of the attorney fees unjust.

"(2) The provisions of subsection (1) of this section apply to an administrative or judicial proceeding brought by a petitioner against a state agency, as defined in ORS 291.002, for:

"(a) Judicial review of a final order as provided in ORS 183.480 to 183.484;

"(b) Judicial review of a declaratory ruling provided in ORS 183.410; or

"(c) A judicial determination of the validity of a rule as provided in ORS 183.400.

"(3) Amounts allowed under this section for reasonable attorney fees and costs shall be paid from funds available to the state agency whose final order, declaratory ruling or rule was reviewed by the court."

itself, render the case justiciable. Rather, justiciability, if it exists, must derive from either the potential impact on other litigation based on the alleged invalidity of the February 1997 order or the adverse impact on petitioner's potential employment.

■      Petitioner's "litigation impact" argument is unavailing. The essence of that argument—of petitioner's purported "interest"—is that: (1) petitioner *might* bring a tort action against the University based on the alleged improper imposition of discipline in February 1997; and (2) *if* petitioner were to bring such an action and if we in this action were to hold that the February 1997 order was invalid, our determination here would enhance petitioner's prospects in that as-yet-unfiled tort action. That alleged impact on future litigation does not render this matter justiciable. As we recently stated in *Joint Council of Teamsters # 37 v. BOLI*, 168 Or App 398, 11 P3d 247, *rev den* 331 Or 429 (2000), in addressing an administrative challenge to a rule that had been superseded by an amended rule:

> "The mere possibility that our invalidation of the 1998 rates *might* have the practical effect of informing another court's consideration of the validity of [that order] in a future action that petitioners *could* file, but have not filed— and may never file—is not 'effectual relief' for purposes of mootness." *Id.* at 413 (emphasis in original).

Thus, the mere possibility that petitioner *might* file a future tort action in which the lawfulness of the February 1997 order would be a relevant consideration does not constitute "effectual relief" for purposes of mootness. *Joint Council of Teamsters # 37*, 168 Or App at 413; *see also Burns v. Board of Psychologist Examiners*, 116 Or App 422, 424-25, 841 P2d 680 (1992) (judicial review action challenging lawfulness of earlier psychological examination mooted when petitioner passed subsequent examination and there was no cognizable claim for monetary relief).[9]

---

[9] The University suggests that, given the passage of more than two years since the February 1997 order, the filing and prosecution of such a tort action would necessarily be time barred under ORS 30.275(8) (OTCA claim must be filed within two years of the "alleged loss or injury"). Given our analysis, we need not address that contention.

The question of justiciability thus reduces to petitioner's "black mark on my record" contention. Specifically, petitioner contends that "[t]his case is not moot because campus convictions for unwanted sexual behavior, stalking and sexual harassment in 1997, and an enforcement action in 1998, continue to provide even the slightest possibility that petitioner's career might be adversely affected in the future." We disagree.

■ Petitioner is correct that the notation of previous disciplinary action on a student record can be sufficient to preserve the justiciability of a challenge to the lawfulness of school action. *See Barcik*, 321 Or at 192 ("By ordering defendants to remove all references to Barcik's discipline associated with this matter from his academic record, the court would not be enjoining any act that already has been completed."). In *Barcik*, the court dismissed as moot several former high school students' claims that school regulations were invalid and had been unlawfully enforced on the ground that the students had graduated. *Id.* at 179-80. As to one student however, plaintiff Barcik, the court concluded that the claims were not moot, because the court could order that references to related discipline be removed from his academic record. *Id.* at 192.

■ This case is materially distinguishable from *Barcik*. In particular, the holding in *Barcik* was founded, necessarily, on the premise that, without judicial intervention, references to the earlier discipline would remain on Barcik's record. Here, however, OAR 571-020-0075(5)(b) requires that the University destroy the disciplinary records of a student "upon graduation."[10] Petitioner graduated in the Spring of 1999. Consequently, the disciplinary records that are the

---

[10] OAR 571-021-0075(5) provides:

"(a) Disciplinary records are records of charges made and the evidence and proceedings related to the charges with respect to a named student and involving infractions, for which sanctions may be imposed, of University or OSSHE Board rules. Disciplinary records are maintained exclusively by the Coordinator of the Student Conduct Program;

"(b) The disciplinary record shall be destroyed upon graduation of the student or five years after a non-graduate leaves the University. Exceptions to this retention policy are limited to the following:

"(A) The student disciplinary record upon which a decision was made to expel, suspend, revoke a degree, evict, or to make a negative notation in the permanent academic record, shall be retained in compliance with subsection

object of petitioner's concern no longer exist. Thus, the only consequence of the February 1997 order that would have rendered the collateral challenge justiciable was obviated by petitioner's graduation during the pendency of this judicial review. The case is moot.

Judicial review dismissed as moot.

---

(b) of this section except three years shall be the minimum period of retention regardless of graduation;

"(B) Disciplinary records relevant to alleged criminal activities on the campus shall be retained beyond the normal retention period only if formal charges have been brought by civil authorities. If it is necessary to retain such records beyond the normal retention period, they shall not be retained beyond completion of the legal proceedings in question."

Neither of the exceptions described in OAR 571-021-0075(5)(b) applies in this case.