Argued and submitted September 29, 2004, remanded with instructions to vacate judgment as moot February 16, 2005

Richard BLECHSCHMIDT,
*Respondent,*

*v.*

William W. SHATZER,
Portland City Code Hearings Officer;
and City of Portland,
*Appellants.*

0108-08565; A121780

106 P3d 682

Harry Auerbach, Senior Deputy City Attorney, argued the cause and filed the brief for appellants.

Julie A. Stevens argued the cause for respondent. With her on the brief was Legal Aid Services of Oregon.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges

LINDER, J.

## LINDER, J.

Petitioner, who was issued a 90-day drug-free zone (DFZ) exclusion notice under the provisions of *former* Portland City Code (PCC) chapter 14.100, appealed that exclusion to the City of Portland's Code Hearings Office.[1] The hearings officer affirmed the exclusion, and petitioner filed a petition for a writ of review and a complaint for declaratory relief with the circuit court. The circuit court reversed the hearings officer, declaring PCC chapter 14.100 unconstitutional. Respondent City of Portland now appeals.[2] For the following reasons, we remand with instructions to vacate the judgment.

Initially the circuit court granted respondent's motion to dismiss, agreeing that the issue was moot due to petitioner's failure to seek and obtain a stay of the exclusion order pending appeal. On reconsideration, however, the circuit court held an evidentiary hearing on petitioner's claim that the exclusion notation on his Portland Police Data System (PPDS) record had a continuing effect on his ability to qualify for government-subsidized housing. After that hearing, the circuit court ruled that the case was not moot and that PCC chapter 14.100 violated petitioner's constitutional rights. On appeal, respondent raises three assignments of error. Because respondent's first argument—that the expiration of the 90-day exclusion rendered the case moot—is dispositive, we do not address respondent's remaining arguments.

At the evidentiary hearing, petitioner presented evidence concerning the application process for Housing Authority of Portland (HAP) and his anticipated individual needs. To obtain assistance from HAP, an applicant must meet federally mandated income restrictions and, in the case of a single male, either have a verifiable disability or be over the age of 62. In addition, HAP requires an applicant to produce, among other things, a copy of his current PPDS record. HAP

---

[1] All references to PCC chapter 14.100 are to the version that was in effect at the time petitioner received the DFZ exclusion notice. That portion of the PCC has since been amended and renumbered.

[2] Nominally, the hearings officer is also named as a respondent in this appeal.

looks at all crimes within the past 10 years, as well as DFZ exclusions, and then applies those to a matrix system to formulate a final score. A score of four generally results in an automatic denial. However, according to Kirschner, the secretary for HAP's intake department, the screening process is fairly subjective despite the use of a matrix system. Although she could not say with any degree of certainty, Kirschner testified that, because of the number of theft and narcotics possession charges on petitioner's PPDS record, his application for HAP would probably be denied, and he would be offered a hearing in which he would be given the opportunity to demonstrate eligibility. She also testified that HAP would likely look more closely at the DFZ exclusions because of petitioner's possession of heroin charge in 1995.

Despite his lengthy PPDS record, petitioner had previously applied for and received housing assistance from various organizations. Petitioner testified that he had previously lived in buildings owned and operated by Central City Concern and that he had previously applied for and received assistance from HAP. Petitioner also testified that he was disabled and that, despite the fact that he currently resides with his father who has Alzheimer's disease, he will probably need to apply for assistance from HAP within the next nine years.

Respondent argues on appeal that the case is moot because the DFZ exclusion has expired and any collateral effects that the exclusion notation might have are too speculative. As the Oregon Supreme Court recently reaffirmed, mootness is one of the "constellation of related issues" encompassed within the broader question of justiciability. *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004). Under traditional principles, a case is justiciable if the parties have adverse interests and "the court's decision in the matter will have some practical effect on the rights of the parties to the controversy." *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993). The requirement that the court's decision have a practical effect on the party invoking the court's jurisdiction must remain satisfied throughout the litigation. *Utsey v. Coos County*, 176 Or App 524, 540, 542, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003) ("Without some demonstration that the challenged agency action will have a practical

impact on the person challenging it, such a case amounts to no more than a request for an unconstitutional advisory opinion."). Thus, a case that is "otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties, will be dismissed as moot." *Brumnett*, 315 Or at 406. That is true even if the case involves issues that are " 'capable of repetition, yet evading review.' " *Yancy*, 337 Or at 363. In Oregon, the judicial power simply does not extend to moot or otherwise nonjusticiable matters. *Id.*

Thus, the preliminary question that this court must answer to determine whether petitioner's case is moot is, "What precisely does it mean to say that a decision must have 'a practical effect' on the rights of the parties?" *Utsey*, 176 Or App at 541-42. As noted in *Utsey*, that question is often answered in the negative by defining "practical effect" in terms of what is *not* sufficient, rather than the positive, and more practical, what *is* sufficient. *Id.* In *Barcik v. Kubiaczyk*, 321 Or 174, 191-92, 895 P2d 765 (1995), however, the Oregon Supreme Court answered that question in the positive, identifying a situation that, at first glance, appeared to be moot but that the court determined in fact was not.

*Barcik* involved a challenge to a high school's censorship of student publications in which various students alleged violations of their state and federal constitutional rights and sought declaratory, injunctive, and monetary relief. *Barcik*, 312 Or at 177-80. The trial court granted some of the requested declaratory relief, and, on appeal, this court reversed and remanded with instructions to vacate the judgment and dismiss the complaint on the ground that the claims were moot because the plaintiffs, who were seniors when the litigation began, all had graduated from high school. *Id.* at 181-82.

The Supreme Court concluded that, although most of the claims were moot, those of one plaintiff—Barcik—were not. The court noted that "Barcik's academic record contain[ed] references to disciplinary action taken against him, resulting from [the] defendants' alleged deprivation of his [constitutional] rights." *Id.* at 191. No other student had a

disciplinary record as a direct result of the alleged constitutional violations. The court explained:

"Because of the references to discipline presently in Barcik's academic record, there exists a controversy between the parties on which judgment effectively may operate. By ordering [the] defendants to remove all references to Barcik's discipline associated with this matter from his academic record, the court would not be enjoining an act that already had been completed."

*Id*. at 192. The court concluded that a live, justiciable controversy existed with respect to Barcik's disciplinary record and that Barcik was "entitled to consideration of his state law claims on the merits, to the extent that those claims relate to his disciplinary record." *Id*. Significantly, the court did *not* identify what, if any, immediate or practical implications that the disciplinary record would have on Barcik. Rather, the court appears to have regarded the mere existence of the disciplinary record, coupled with an adequate remedy (expungement), as having a practical effect on Barcik. *See, e.g., id*.[3] If *Barcik* is so understood, the decision would seem to suggest that the mere presence of the DFZ exclusion notation on petitioner's PPDS record would be sufficient to defeat a mootness claim, regardless of any immediate or practical implications it might have.

That aspect of *Barcik*, however, is at least implicitly in tension with the court's more recent decision in *Yancy*, which is nearly factually and procedurally identical to this case. In *Yancy*, police detained the petitioner for jaywalking and, after searching him, discovered less than an ounce of marijuana. Police issued him "a citation that excluded him from two Portland city parks for a period of 30 days." *Yancy*, 337 Or at 347. The petitioner appealed to the city's hearings

---

[3] With respect to Barcik's claim for prospective relief, the court reached the opposite conclusion:

"The existence of that justiciable controversy does not extend, however, to Barcik's claims for *prospective* relief. Like the other Senior plaintiffs, Barcik cannot be affected by a declaration that future enforcement of the regulations is unconstitutional. Neither can he be affected by a declaration restraining the [school] district from enforcing those regulations in the future, because he will not be subject to those regulations in the future."

*Barcik*, 321 Or at 192 (emphasis in original).

officer, who affirmed the exclusion. After the exclusion expired, the petitioner filed a writ of review in the circuit court, raising various constitutional challenges to the ordinance. *Id.* at 348. The circuit court, reaching the merits of the case, rejected the petitioner's arguments. On appeal, this court ordered the circuit court to vacate the judgment on the ground that, because the exclusion period had expired, the case was moot. *Id.* at 348-49.

On review, the Supreme Court affirmed, concluding, without explicit discussion, that the petitioner's claim was moot. *See id.* at 347-49. Instead, the court's analysis focused exclusively on whether the constitutional grant of judicial power encompassed the authority to consider moot cases that are "capable of repetition, yet evading review." *Id.* at 362-63; *see also id.* at 363 n 1 (Balmer, J., specially concurring) (describing the issue before the court as "whether the judicial power extends to deciding a case that becomes moot after it has been filed in the trial court").[4] The court reaffirmed its holding in *Barcik* and other recent decisions that the "judicial power under the Oregon Constitution does not extend to moot cases" that are likely to recur but evade review. *Id.* at 363. The court also reaffirmed its holding in *Brumnett* that a case, to remain justiciable, must be one in which the court's decision will have some " 'practical effect on the rights of the parties to the controversy.' " *Id.* at 349 (quoting *Brumnett*, 315 Or at 405).

Both *Barcik* and *Yancy* present factually similar situations: Plaintiff Barcik received a disciplinary mark on his academic record, something that would have remained in the absence of judicial intervention. Similarly, the petitioner in *Yancy* received a notice of exclusion that, despite its expiration, remains a blemish on his police record and that, as indicated by the present case, could *potentially* have future consequences. In reconciling those two cases, it may be that the rationale behind the court's decision in *Barcik* was not express. That is, the court may have been aware or otherwise

---

[4] In *Frederick v. City of Portland,* 178 Or App 571, 574, 38 P3d 288 (2002), we similarly concluded that the petitioner's challenge to his DFZ exclusion was moot, because the exclusion had expired, and that it was not justiciable on the theory that the issue was capable of repetition, yet evading review.

was satisfied that Barcik's disciplinary record, despite his graduation, would have some immediate consequence to him, such as impairing his ability to apply for college admission. In all events, and in the wake of both *Barcik* and *Brumnett*, this court has adhered to *Brumnett*'s requirement of a practical and present effect on a party's rights for a case to remain justiciable. *See, e.g., Keeney v. University of Oregon,* 178 Or App 198, 208-09, 36 P3d 982 (2001), *rev den,* 334 Or 327 (2002) (noting that "the notation of previous disciplinary action on a student record can be sufficient to preserve" justiciability as a "black mark" on the petitioner's record but dismissing the case as moot because the records had been destroyed); *Cottongim v. Woods,* 145 Or App 40, 42-43, 928 P2d 361 (1996) (holding that a law student's challenge to an expired restraining order was not moot because there was evidence that it would affect his admission to the Bar). We therefore conclude that this case must meet that requirement.

Thus, putting aside the exclusion notation's mere existence on petitioner's record and the fact that our decision might alter that notation,[5] we must still determine whether our resolution of petitioner's claims would "have some practical effect on the rights of the parties to the controversy." *Brumnett,* 315 Or at 405. In *Brumnett,* the petitioner had sought review of a determination of the Psychiatric Security Review Board (PSRB) that he suffered from a mental disease or defect. *Id.* at 404. During the pendency of the appeal, the PSRB released the petitioner unconditionally. *Id.* The petitioner argued that the case was not moot "because he was still subject to a statutory obligation to pay all or part of the costs of his case" while confined, thus creating "a collateral economic effect." *Id.* at 404-05. The court rejected that argument, stating that "[t]he mere possibility that the state might seek such an order at some future date is not sufficient to make dismissal inappropriate." *Id.* at 407.

---

[5] Although it is not clear that petitioner explicitly requested that the DFZ exclusion notation be removed from his PPDS record, based on the arguments presented, both before the circuit court as well as this court, we understand the proper remedy to be something akin to a removal or a subsequent notation explaining the ultimate outcome of the case. Regardless, as discussed below, we need not determine the appropriate remedy, because we ultimately conclude that the case is, in fact, moot.

■ The evidence presented by petitioner in this case demonstrated that, at best, he "anticipate[s] needing to apply to places, either the [HAP] or similar places" at some point within the next nine years and that the DFZ exclusion notation *might* have some effect on his eligibility for such assistance.[6] The "mere possibility" that petitioner might at some future date apply for assistance and that his DFZ exclusion may or may not affect his eligibility is speculative at best and "not sufficient to make dismissal inappropriate." *Brumnett*, 315 Or at 407. Accordingly, the case is moot and was when the circuit court decided the merits. The proper disposition is to vacate the circuit court judgment and direct the circuit court to dismiss the writ of review as moot. *See Yancy*, 337 Or at 363.

Remanded with instructions to vacate judgment as moot.

---

[6] In its opinion, the circuit court determined that petitioner had lived in public housing in the past and "anticipates he will apply for assistance from the [HAP] in the near future." The only evidence in the record to support that conclusion was petitioner's own testimony that he anticipated needing to apply for housing assistance sometime in the next nine years.