Submitted April 4, petition for judicial review dismissed as moot
October 1, 2014

HOUSING AUTHORITY OF JACKSON COUNTY,
*Respondent,*

*v.*

CITY OF MEDFORD,
*Petitioner,*
*and*

David FROHNMAYER,
Mira Frohnmayer, Gerald Pringle, Harriet Pringle,
Chris Hill, and Devon Finley,
*Respondents.*

Land Use Board of Appeals
2011089; A151710

337 P3d 146

John R. Huttl filed the brief for petitioner.

Michael C. Robinson, Seth J. King, and Perkins Coie LLP filed the brief for respondent Housing Authority of Jackson County.

No appearance for respondents David Frohnmayer, Mira Frohnmayer, Gerald Pringle, Harriet Pringle, Chris Hill, and Devon Finley.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

The City of Medford seeks review of a Land Use Board of Appeals (LUBA) decision remanding the city's denial of an application by the Housing Authority of Jackson County to construct a multifamily housing complex in downtown Medford. After the case was submitted to us, we issued an order to the City of Medford to show cause why, in light of a settlement agreement reached among the parties, the petition for judicial review presents a justiciable controversy. For the reasons that follow, we conclude that the case is moot and dismiss the petition for judicial review.

The Housing Authority of Jackson County is a public corporation with the mission of providing affordable housing for families in Jackson County. Toward that end, the housing authority sought approval from the City of Medford in March 2011 to construct a 100-unit, multifamily housing complex on a six-acre property that the housing authority owned in downtown Medford. The city's Site Plan and Architectural Review Committee (SPAC) reviewed and approved the housing authority's application, subject to conditions of approval. Thereafter, a group of citizens appealed SPAC's decision to the Medford City Council. The city council held a hearing on the housing authority's application at which the city council voted to uphold the citizens' appeal and deny the housing authority's application. Two weeks later, the city council voted to adopt a written decision denying the application.

The housing authority subsequently appealed to LUBA, raising five assignments of error. In a written decision sustaining four of the housing authority's assignments, LUBA remanded the city's decision. *Housing Authority of Jackson County v. City of Medford*, 65 Or LUBA 295 (2012). At issue on review is only LUBA's conclusion that the mayor of Medford had violated ORS 277.180 by failing to disclose certain *ex parte* contacts and that that failure—along with other errors by the city council in denying petitioner's application—necessitated a remand.

The city petitioned for judicial review, and the parties thereafter moved to hold the case in abeyance while they pursued a settlement. In December 2012, the parties

entered into an "Agreement for Disposition and Development of Property and Settlement of Appeals." That agreement provided for the development by the housing authority of 100 units of multifamily housing in downtown Medford. Of the 100 units, 50 were to be developed on a portion of the housing authority's six-acre property. The remaining 50 units were to be developed on a second downtown property, which the city agreed to convey to the housing authority for that purpose. In exchange for that conveyance, the housing authority agreed to convey a portion of its original six-acre property to the city for use as an undeveloped buffer adjacent to a city park.

Regarding the pending applications for the development of the housing authority's downtown property,[1] the agreement provided:

> "Subject to the terms and conditions of this Agreement, it is the intention of the Parties to fully settle and compromise all claims asserted in ongoing appeals pending before [LUBA] and before the Court of Appeals [involving the petitioner's development of the property]. In furtherance thereof, the Parties specifically agree as follows:

> "* * * * *

> "SPAC I Application. The parties agree to keep the SPAC I Appeal in abeyance until after Closing. Within fourteen (14) days after Closing, [the parties] shall agree to reactivate the SPAC I Appeal for the limited purpose of allowing Citizens and City to file briefs assigning error to LUBA's decision to sustain a portion of the fifth assignment of error concerning possible ex parte communications between City's Mayor and David Frohnmayer ('Factual Issue'). No party shall assign any other error to LUBA's decision. Housing Authority shall not oppose any brief by Citizens and/or City that is limited to the Factual Issue and shall not appeal any decision by the Court of Appeals in favor of Citizens and/or City on the Factual Issue. If the SPAC I Appeal is ultimately remanded to City,

---

[1] In addition to the dispute before us on review, which the agreement refers to as "SPAC I," the housing authority had filed a second application to develop its downtown property (the SPAC II Application), which is pending before SPAC. The housing authority had also filed an application to partition its downtown property (the Partition I Application), which the city had denied. The housing authority's appeal of that denial is pending before LUBA.

Housing Authority shall withdraw the SPAC I Application in the event Housing Authority obtains final approval of the Applications, subject to conditions Housing Authority deems acceptable in Housing Authority's sole and absolute discretion, without appeal, or if appealed, such appeals have been finally resolved in a manner satisfactory to Housing Authority in Housing Authority's sole and absolute discretion."

(Emphasis added.)

The applications referred to in that provision, on which the housing authority's withdrawal of the SPAC I appeal were premised, are the land use applications required for the development of the two properties contemplated by the agreement. After listing those applications, the agreement provided that "City staff shall review and recommend approval of the Applications." Moreover, the agreement included, as a condition precedent to the closing of the sale of the property under the agreement, that the housing authority would have "obtained final approval of the Applications [that the city had agreed to recommend approving], subject only to conditions Housing Authority deems acceptable in Housing Authority's sole and absolute discretion."

As noted, the parties entered into the agreement in December 2012. The following month, January 2013, the parties moved to continue to hold this case in abeyance pending closing of the sales of property under the agreement. One year later, in January 2014, the parties moved to reactivate the case. Thereafter, the city filed its opening brief, in which it argues that, in concluding that the mayor had failed to disclose *ex parte* contacts, LUBA made a factual determination that is not supported by the record—*viz.*, that the mayor was present at the city council meeting at which the city council adopted the written decision denying the housing authority's application. The housing authority filed an answering brief providing only that it "does not oppose the assignment of error or relief sought in [the city's] opening brief." The housing authority also filed a motion to dismiss its cross-petition for judicial review, as "the result of a negotiated settlement or compromise." The case was then submitted on the briefs.

In June 2014, we issued an order to the city to show cause why, in light of the agreement, the city's petition continues to present a justiciable controversy. The city thereafter filed a memorandum in response to our order. In it, the city argues that "[r]eversing LUBA will correct the injustice that the Board has meted Medford officials and citizens who engaged in alleged *ex parte* contacts, having a practical effect on those parties' rights." However, notwithstanding that statement, the city did not identify how our resolution of the merits of its petition would affect the rights of the parties. Based on our review of the agreement, we conclude that the case is moot.

We have an independent obligation to determine whether a case submitted to us for decision presents a justiciable controversy. *See, e.g., Oregon Medical Association v. Rawls,* 281 Or 293, 296, 574 P2d 1103 (1978). Among the "constellation of related issues" that that determination encompasses is whether a case has become moot. *See, e.g., Yancy v. Shatzer,* 337 Or 345, 349, 97 P3d 1161 (2004). In order to avoid mootness, the parties in a given dispute must "have adverse interests and 'the court's decision in the matter [must] have some practical effect on the rights of the parties to the controversy.'" *Blechschmidt v. Shatzer,* 197 Or App 536, 539, 106 P3d 682 (2005) (quoting *Brumnett v. PSRB,* 315 Or 402, 405, 848 P2d 1194 (1993)). Accordingly, even if otherwise justiciable, a case "in which a court's decision no longer will have a practical effect on or concerning the rights of the parties[] will be dismissed as moot." *Brumnett,* 315 Or at 406.

In its memorandum in response to our order to show cause as to why this matter is justiciable, the city argues, in effect, that LUBA has harmed Medford city officials by concluding that Medford's mayor had failed to disclose *ex parte* contacts that ORS 227.180 required him to disclose and that "LUBA perpetuates its miscarriage of justice by continuing to cite to its decision as precedent in its ongoing published decision[]making." However, despite the city's argument to the contrary, the "correction" of the "injustice that [LUBA] has meted Medford officials * * * who engaged in alleged *ex parte* contacts" is not the type of practical effect that would prevent dismissal. Instead, to avoid dismissal,

the city must demonstrate how that correction would have a real, nonspeculative effect on the rights *of a party. See, e.g., Blechschmidt*, 197 Or App at 544 ("The 'mere possibility' that petitioner might at some future date apply for assistance and [the issue on review] may or may not affect his eligibility is speculative at best and 'not sufficient to make dismissal inappropriate.'" (quoting *Brumnett*, 315 Or at 407)).

In this matter, the city has not identified any practical harm to any of the parties—only a perceived slight to the mayor's reputation. Nor has it identified how any decision we could render would have a practical effect on the rights of any party—*viz.*, the City of Medford, the Housing Authority of Jackson County, or the named citizens who had objected to the housing authority's initial application to develop its downtown property. Nor can it. As set out above, the housing authority has agreed to withdraw the application at the heart of this dispute if two conditions are met: First, the housing authority must obtain final approval of its land use applications for the development contemplated in the agreement. Second, the application must be remanded to the city.

By the terms of the agreement, the satisfaction of the first condition was required before this matter could reach us on review. It was a condition precedent to the closing of the property sales under the agreement that the housing authority obtain approval of its land use applications to develop the property that is the subject of the agreement. Likewise, the closing of the agreement necessarily preceded the reactivation of this case:

"The parties agree to keep the SPAC I Appeal in abeyance until after Closing. Within fourteen (14) days after Closing, [the parties] shall agree to reactivate the SPAC I Appeal * * *."

As to the second condition, given that LUBA remanded the housing authority's application to the city on multiple grounds, all but one of which are not at issue on judicial review, any decision as to the city's sole assignment of error would have the same practical effect: remand of the application to the city and, ultimately, withdrawal of the application by the housing authority. Accordingly, because

any decision on review "no longer will have a practical effect on or concerning the rights of the parties," *Brumnett*, 315 Or at 406, we conclude that the petition for review must be dismissed as moot.

Petition for judicial review dismissed as moot.